I .KLEES, Chief Judge.
The plaintiff, Roland Gibson (“Gibson”), filed suit against the State of Louisiana, Lloyd West, the New Orleans District Attorney’s Office, the City of New Orleans and a fictitious insurance company seeking damages for false arrest and imprisonment, malicious prosecution and personal injury. The claims against both the State and the District Attorney’s Office were dismissed. After a bifurcated jury/judge trial, the court awarded eleven million dollars in damages in favor of plaintiffs Roland Gibson, Sr., Jessie Gibson, Roland Gibson, Jr. and Dennis Gibson. The court held the City to be 90% at fault for the wrongful incarceration of Roland Gibson, with Lloyd West being 10% at fault. Defendants, the City of New Orleans and Lloyd West now appeal. We affirm as amended.
On December 30, 1967, a taxi cab driver was killed during an armed robbery in New Orleans, Louisiana. A fingerprint which was lifted from one of the windows of the cab was traced to Lloyd West (“West”). West admitted to being on the scene of the crime but implicated Gibson as being the triggerman. Thereafter, both West and Gibson were jointly indicted for the murder of the taxi cab driver.
| ;At the criminal trial, West, Gibson’s co-defendant, testified again that he had participated in the crime but claimed that Gibson was the one who shot and killed the cab driver. On November 25, 1968, Gibson was convicted by a jury of first degree murder and was sentenced to life imprisonment. On November 27, 1968, West entered into a plea bargain and was sentenced to life imprisonment.
On June 3, 1985, West signed an affidavit in which he recanted his criminal trial testimony. West stated that he lied and falsely accused Gibson of shooting the cab driver because he was (1) afraid of the electric chair and (2) forced by the New Orleans police to implicate Gibson in the murder. Further, West admitted that George Carter, not Gibson, was the murderer.
In 1992, Gibson filed an application for post-conviction relief on the basis of West’s affidavit. Gibson also claimed that the District Attorney had withheld a supplemental police report containing exculpatory evidence which should have been given to Gibson’s defense attorney.
This supplemental report, as well as West’s affidavit, was entered into evidence at two hearings held on October 23, 1992 and December 18, 1992. Thereafter, the trial judge granted Gibson’s motion for post-conviction relief. The state entered a nolle prosequi as to Gibson’s indictment on March 31,1993.
On February 12, 1993, Gibson, his wife and two children, filed this instant civil suit. On February 2, 1998, a jury verdict was rendered against West and the court rendered judgment against the City. In its reasons for judgment, the court found that the police did not have probable cause to arrest Gibson for the armed robbery and murder of the cab driver and assessed 10% of fault to West and 90% of fault to the City. The court awarded damages accordingly:
[[Image here]]
Both West and the City appeal this final judgment.
Before discussing the City’s arguments on appeal, we will address two preliminary matters: (1) West’s exception of no cause of action and (2) plaintiffs’ argument that the criminal transcripts are outside the record and cannot be considered by this court on appeal.
*381 First, West argues that he is entitled to absolute immunity from the judgment that was rendered against him because he was a non-litigant witness in Gibson’s criminal trial. See Spellman v. Desselles, 596 So.2d 843, 845 (La.App. 4 Cir.1992), wrii denied 605 So.2d 1080 (La.1992). We find no merit to this argument. Although we agree with West that non-litigant/non-party witnesses enjoy absolute immunity, we do not find that West is a non-litigant witness. The record reflects that West was jointly indicted with Gibson for the armed robbery and murder of the taxi cab driver and that he entered a guilty plea and received a life sentence. Accordingly, West’s exception of no cause of action is denied.
Second, plaintiffs argue that the City cannot refer to the criminal trial transcripts because they are outside the record. However, the record indicates that on September 7, 1998, this court ordered the entire criminal record and the original Lpolice report to supplement the record on appeal. Therefore, we find that the exhibits in question are part of the record before us.
The City argues on appeal that the trial court erred in holding: (1) that the New Orleans police officers had no probable cause to arrest Roland Gibson, (2) that the City of New Orleans is liable not only for the plaintiffs’ damages for false arrest, but for the damages suffered by the plaintiffs for Roland Gibson’s conviction and twenty-five year wrongful incarceration, and (3) that the City of New Orleans was 90% at fault.
Appellate courts may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”. Rosell v. ESCO, 549 So.2d 840 (La.1989) writ denied 561 So.2d 105 (La.1990). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Id. Thus, if the trial court’s decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. Further, the allocation of fault is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error or clearly wrong. Maeder v. Williams, 94-0754 (La.App. 4 Cir. 11/30/94) 652 So.2d 1005 writ denied 94-3150 (La.3/10/95) 650 So.2d 1177.
The City’s first complaint is that the trial court erred in concluding that the New Orleans police did not have probable cause to arrest Gibson for the armed robbery and murder of the taxi cab driver.
Jurisprudence holds that “probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy | sinformation are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime.” State v. Wilson, 467 So.2d 503 (La.1985) cert. denied, Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (U.S.La. Oct.15, 1985).
In the sixteen pages of reasons for judgment, the trial court reviewed and evaluated the evidence that was available to the police in March of 1968. The trial court gave the following reasons for finding that the police did not have probable cause to arrest Gibson:
First, the court notes that initially the police were looking for a white male in connection with this crime. This individual was wanted for questioning. Apparently, he was never found. The court notes that the physical description of this individual does not match Mr. Gibson’s physical description in any way. Second, there is no explanation in the police reports as to why or when the *382 police made a huge leap of concluding that the crime was committed by two individuals rather than one.
Specifically, the court notes that initially the police were looking for one individual, a white male. Thereafter, a fingerprint analysis identified one print, Mr. West’s. Therefore, the physical evidence just connected only one individual to the crime, Mr. West. Third, there was no physical evidence to connect Mr. Gibson to the crime. Instead, the physical evidence connected Mr. West, a convicted felon to the crime.
Mr. West’s fingerprint was found inside of the cab and eventually, Mr. West admitted that he had the murder weapon. Fourth, the only evidence that the police had against Mr. Gibson came from Mr. West. Mr. West was a convicted felon who had changed his story on at least three occasions who was physically connected to the crime by a fingerprint and by his own admission was in possession of the murder weapon. Mr. Cray-ton’s testimony was merely that he had seen Mr. West and Roland together hours before the crime was committed, Mr. Crayton saw them together at 12:00 Noon and the murder was committed at 9:00 p.m.
Mr. Gibson had no criminal convictions, yet, the police were still willing to take Mr. West’s word that he was a murderer. Finally, there is no indication that the police even contacted Greyhound to see if the company kept records or logs Ifito indicate when the sale of a ticket from Clarksville, Tennessee to New Orleans took place. They did not even check the bus schedule. Instead, they sat back and waited for Mr. Gibson’s family to produce a sub which by that time was three months old. Not surprisingly, the sub could not be located.
Considering all of the evidence that was available to the police in March 1968, the court concludes that they did not have probable cause to arrest Mr. Gibson for the armed robbery and murder of Charles Reinecke.
The City argues that the trial court’s reasons for judgment incorrectly describes the information available to the police as of the date Gibson was arrested and charged. We find merit with only one of the City’s error’s alleged on appeal.
We agree with the City that in the trial court’s reasons for judgment, the trial court misrepresented the information the police gathered from Thomas Crayton. Specifically, the trial court stated that “Mr. Crayton stated initially that Mr. West was not with him at all on the date in question, December 30, 1967, instead, Mr. Crayton stated that around noon on December 30, 1967, he saw Mr. West with a man named Roland who was AWOL from the Army.” However, the Supplement Report states, in pertinent part:
Crayton also stated that West was positively not with him on 12-30-67. Crayton stated that Lloyd West and a friend of his known only as “Roland”, who was alleged to have been AWOL from the Army at the time. Crayton stated that he left his apartment shortly before noon on 12-30-67, leaving West and Roland in the apartment. When he returned later in the afternoon, both subjects were gone and he did not see West again until New Years Day.
Nonetheless, after reviewing all of the evidence, we do not find this misrepresentation of the facts establishes that the trial court was clearly wrong in concluding that the police did not have probable cause to arrest Gibson. We reiterate that the trial judge is afforded great deference in making factual conclusions. Rosell, 549 So.2d 840.
|7The City’s second complaint is that the trial judge erroneously held the City responsible, through its police, for the later events which resulted in Gibson’s wrongful conviction and incarceration. The City alleges that it was the District Attorney who made the decision to prosecute Gibson and who failed to turn over *383 the Supplemental Report prepared by police to the defense counsel. We find merit to this argument.
Article V, § 26(B) of the Louisiana Constitution provides that the district attorney controls the administration of criminal prosecutions. Further, LSA-C.Cr.P. art. 61 states that “the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.” We have been unable to locate Louisiana jurisprudence to support the City’s position that the actions of a prosecuting attorney breaks the chain of causation for later results of an alleged false arrest against a police officer. However, we have reviewed and are persuaded by the ease, Barts v. Joyner, cited by the City, to support their position that the District Attorney is liable for Gibson’s wrongful conviction and incarceration. 865 F.2d 1187 cert. denied, 498 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (U.S.Fla. Oct.2, 1989).
In Barts, the plaintiff reported that her “father” had been shot by an unknown intruder. Plaintiff later admitted that she' had shot the victim when he started kissing her. The police then arrested plaintiff for the murder. Plaintiff was tried and convicted of second degree murder. Plaintiff served eight months of a twenty-five year sentence before her release on appellate bond. She finally was able to tell her attorneys that she shot the victim because he had raped her and she thought he was attempting to do so again. Plaintiff was granted a new trial, where |Rshe was acquitted, because of her inability to communicate the rape due to Rape Trauma Syndrome. Plaintiff brought an action against the officers in their capacities as deputy sheriffs and alleged that her detention and transportation to the sheriffs station was an unlawful seizure within the meaning of the fourth amendment. Plaintiff alleged that she was entitled to damages for her criminal trials, conviction, incarceration and resulting aggravation of her Rape Trauma Syndrome. A jury awarded $175,000 against each police officer.
On appeal, the Eleventh Circuit vacated the judgment against defendants in their official capacity and remanded for a new trial. The court held that the intervening acts of the prosecutor, grand jury, judge and jury each break the chain of causation unless it can be shown that these intervening acts were the result of deception or undue pressure by the policemen. Barts, 865 F.2d at 1195. The court stated that the plaintiff failed to produce any evidence that the intervening acts of the prosecutor, grand jury, judge or jury were caused by any deception or undue pressure by the deputy sheriffs. Id. at 1196. Further, the court explained that the plaintiff failed to produce evidence “in which a recovery has been allowed against the arresting police officers for everything, including time served in prison following a conviction, that followed the improper seizure or arrest.” Id. at 1197. The court continued to explain that it would “not create that precedent in the absence of a showing that the police officers deceived the court officials or unduly pressured them or that the court officials themselves acted with malice and the police joined them.” Id.
In this instant case, Gibson has failed to present evidence that the police officers unduly pressured the District Attorney to act with malice. We adopt the sound reasoning set forth in the Barts case and find that once the police turned over |flthe investigation to the District Attorney, the responsibility of the police had ended. Accordingly, we hold the District Attorney liable for (1) prosecuting Gibson and (2) failing to turn over the exculpatory information to the defense counsel.
The City’s third complaint is that the trial court erred in its allocation of ninety percent of the fault for Gibson’s alleged false arrest to the City of New Orleans. The City alleges that even if Gibson was falsely arrested, and even if the police officers were partially at fault, the trial court erred in ascribing 90% of *384 that fault to the police. We find merit to this argument.
In assigning fault, the trial court looked only at the actions of each defendant. In its reasons for judgment, the trial court stated that:
As to Lloyd West, his version of the facts differs significantly from the facts set forth in the Supplemental Police Report and Mr. West testified that prior to the crime he had known Mr. Gibson. They had grown up in the same neighborhood and had “hung” out together.
Mr. West also testified that he was beaten and tortured into confessing that he was involved in the armed robbery.... He gave graphic testimony of being kicked in the chest and groin, choked with a rope around his neck, punched, had a pistol stuck in his mouth and was poked with a cattle prod.
Additionally, he testified that in fact the police brought up Mr. Gibson’s name and suggested to Mr. West that Mr. Gibson had committed the crime. Mr. West testified that to save his own life, i.e., to stop the beatings and torture and to avoid the electric chair he implicated Mr. Gibson and agreed to testify against him.
The court found Mr. West to be a very credible witness. He described the beatings and torture in great detail and it was apparent that while testifying that he was actually reliving this experience. Furthermore, the Supplemental police Report indicates that when police were told by Mr. Crayton that he saw Mr. West with an individual “named Roland” who was AWOL, they then learned that Roland Gibson had been reported AWOL |inon the day of the murder. Therefore, when Mr. West was questioned, the police knew of Roland Gibson.
Several years after implicating Mr. Gibson and testifying against him in criminal trial, Mr. West admitted that Mr. Gibson was not involved in the crime. Mr. West now maintains that he and an individual named George Carter committed the crime. The court notes that the physical description that Mr. West gave during the trial of this case of Mr. Carter matches the description of the suspect that the police were initially seeking for questioning as a white male, six feet, one inch tall.
As previously noted, it took Mr. West several years to admit the truth. By then, Mr. Gibson had gone through the ordeal of a trial, been convicted of first degree murder and sentenced to life imprisonment and incarcerated for twenty-four years. As to the city’s culpability, the court has already found that there was no probable cause to arrest Mr. Gibson
Considering the law and evidence, the court assesses fault as follows: Lloyd West 10%, the City of New Orleans 90%.
We reiterate that the allocation of fault is a factual finding which a reviewing court does not disturb unless, upon articulated and detailed analysis and reasons, that finding is demonstrated to be clearly wrong. Maeder, 650 So.2d 1177.
However, as stated above, we find the trial court erred in holding the police, rather then the District Attorney, primarily liable for Gibson’s wrongful conviction and incarceration. The evidence in the record regarding the District Attorney’s actions in the prosecution of this case mandates a finding of fault on the part of the District Attorney. Thus, this court must allocate a percentage of fault to the District Attorney.
Although the Louisiana Supreme Court has recently held in Knapper v. Connick that a prosecutor is entitled to absolute immunity from suit for malicious prosecution, the law still requires a percentage of fault to be allocated to all persons who contribute to the loss. . 96-0434 (La.10/15/96) 681 So.2d 944. As provided in InLa. Civ.Code art. 2323, amended by Act 3 of the 1996 Extraordinary Legislative Session, effective on April 16, 1996:
A. In any action for damages where a person suffers injury, death, or loss, *385 the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. (Emphasis Added)
After reviewing the evidence and law we amend the trial court’s assessment of fault as follows: Lloyd West 10%, the City 45% and the District Attorney 45%.
This court will not address the issue of damages for the City has failed to raise this issue on appeal.
For the foregoing reasons, we affirm as amended.

AFFIRMED AS AMENDED.