758 So.2d 782 (2000)
Roland GIBSON, Jessie Gibson, Roland Gibson, Jr. and Dennis Gibson
v.
The STATE of Louisiana, John St. John and Lloyd West.
No. 99-C-1730.
Supreme Court of Louisiana.
April 11, 2000.
Concurring Opinion April 25, 2000.
Opinion Denying Rehearing June 16, 2000.
*784 Mavis Slattery Early, Annabelle H. Walker, Franz L. Ziblich, New Orleans, Counsel for Applicant.
Matthew B. Collins, Jr., Thomas A. Early, Jr., Catrice Ann Johnson, Maurice Anthony Williams, Dianne Jones Marshall, New Orleans, Counsel for Respondent.
Gerald Joseph Nielsen, Counsel for Louisiana Municipal Association, Louisiana Association of Chiefs of Police (Amicus Curiae).
Concurring Opinion of Chief Justice Calogero, April 25, 2000.
TRAYLOR, Justice.[*]
In 1968, Plaintiff, Roland Gibson was convicted of first degree murder and received *785 a life sentence. He subsequently filed an application for post conviction relief and, in 1993, was granted a new trial based upon the failure of the District Attorney to furnish Brady material. Lloyd West, the sole witness testifying against Gibson, recanted his previous testimony and confession wherein he implicated Gibson as the triggerman in the murder. Gibson, his wife, and two sons filed the instant suit for false arrest and imprisonment, malicious prosecution, and personal injury for Gibson's twenty-five-year incarceration. Without West's testimony, the District Attorney entered a nolle prosequi as to Gibson's indictment on March 31, 1993.
After the civil trial in the instant matter, the trial court found the Police lacked probable cause for Gibson's 1967 arrest and awarded Plaintiffs in excess of eleven million dollars in damages. The trial court apportioned ninety percent of the fault to the City and ten percent to West. The City and Lloyd West appealed. The court of appeal affirmed the trial court, but amended fault to include that attributable to the District Attorney under La. Civ.Code art. 2323. The court of appeal apportioned forty-five percent of the fault to the State, forty-five percent to the City, and ten percent to West. The City sought writs with this court.
We granted writs to determine whether, after being duly convicted of a crime and later released, a party may succeed in a suit for civil damages against the municipality for his arrest, prosecution, and incarceration on the basis of an alleged wrongful arrest. After a thorough review of the applicable law and the entire record, we answer this question in the negative. We hold that the City cannot be found at fault for Plaintiff's alleged wrongful arrest and prosecution and, therefore, vacate the contrary findings of the lower courts.

FACTS AND PROCEDURAL HISTORY

Murder Investigation and Trial
On December 30, 1967, at approximately 8:30 p.m. Charles Reinecke, Jr., a New Orleans Yellow Cab driver, was shot and killed in his taxi during an armed robbery. On January 1, 1968, the New Orleans Police (Police) completed an Offense Against Person Case Report detailing that an unknown five-foot, eleven-inch tall white male, twenty-five to thirty years of age, and weighing approximately 160 pounds was wanted in connection with the investigation "for questioning only." The Police lifted a fingerprint from a rear cab window and later determined it belonged to Lloyd West.
West, who was already in Police custody for an unrelated crime, initially denied any knowledge of the incident and gave the names of two persons with whom he claimed to have been at the time of the murder. These individuals denied being with West. West named a third individual, Thomas Crayton, who denied being with West at the time of the murder but informed the Police that on December 29, 1967 West and an AWOL[1] Army soldier named "Roland" spent the night at his home. Crayton stated that he left West and "Roland" at his home when he left at noon on December 30, 1967. The Police contacted the Army and confirmed that as of 7:00 a.m. on December 30, 1967, a soldier named Roland Gibson was reported AWOL from his company in Fort Campbell, Kentucky, and could have been missing for up to forty-eight hours.[2]
West was again interviewed and confronted with the discrepancies in his statements. At this point, he changed his story and claimed he was with his mother at the time of the murder. His mother was *786 summoned to the police station, refused to be his alibi, and told Police that her son was lying. The Police apprized West of his mother's statement and asked him to submit to a polygraph test. Only after the polygraph test indicated deception did West confess his involvement in the murder and implicate Gibson as the triggerman. West repeated this confession on video, in the presence of his mother and uncle. West told Police that the murder weapon, a gun, was under a mattress at Gibson's residence.[3]
On March 30, 1968, the Police obtained a search warrant for Gibson's residence and served it on Gibson's mother. During the search, the Police found no weapon but remained at the residence and arrested Gibson when he arrived home at 6:20 a.m, intoxicated from a night of drinking. The Police arrested Gibson and took him to the police station. On the afternoon of March 31, 1968, the Police attempted to interrogate Gibson but found Gibson remained intoxicated. On April 1, 1968, Gibson was advised of his rights and questioned by the Police. He repeatedly denied any knowledge of the murder and claimed to have left Fort Campbell by bus at 10:00 p.m. on the day of the murder. According to this story, Gibson could not have reached New Orleans by the time of the murder. Gibson told Police he arrived in New Orleans at approximately 3:00 a.m. the day after the murder. In an attempt to corroborate his story, Gibson told Police he was paid on the morning of December 30, 1967 but later produced an Army pay stub showing he was in fact paid on December 29, 1967. Gibson also produced a bus ticket which bore a date that did not substantiate his story. When confronted with conflicting information provided by the Army, Gibson admitted he was paid on December 29, went AWOL, and arrived in New Orleans before the murder took place.
On May 10, 1968, the Police concluded their investigation and turned all evidence and reports over to the District Attorney. The District Attorney did not provide the defense with the supplemental police report which detailed the numerous conflicting stories and alibis West provided the Police before he confessed and implicated Gibson in the murder.
Gibson and West were indicted for first degree murder. At Gibson's criminal trial, West testified that although he participated in the murder, Gibson was the triggerman. For the first time, Gibson, his wife, and his mother related that Gibson was alternately with his mother and wife the entire night of the murder. When asked the reason for their failure to inform the Police of this alibi during the pendency of the investigation and Gibson's incarceration, the wife and mother responded that they were never asked to do so. Several police officers testified that Gibson had given a different alibi when he was questioned in 1968. Following trial, the jury found Gibson guilty as charged and sentenced him to life imprisonment at hard labor. Two days later, West pled guilty to first degree murder, was sentenced to life imprisonment, and remains incarcerated.
Throughout the years, West and Gibson have filed appeals and numerous requests for post conviction relief.[4] On June 3, 1985, Gibson drew up and gave West an affidavit to sign that recanted his prior testimony. In the affidavit, West swore that he lied at Gibson's trial and falsely accused Gibson to avoid receiving the death penalty. West signed the affidavit and, since that time, maintains Gibson was neither present during nor his accomplice in the murder.

*787 Hearings on Application for Post Conviction Relief

In 1992, approximately seven years after Gibson effected West's affidavit and twenty-four years after his conviction, Gibson filed the instant application for post conviction relief and, for the first time, revealed West's June 3, 1985 affidavit. In it, Gibson claimed the District Attorney withheld a supplemental police report containing exculpatory Brady material.
The criminal court held three hearings on Gibson's motion for post conviction relief. West's testimony and the supplemental police report were entered into evidence at the hearings held on October 23, 1992 and December 18, 1992. At the third and final hearing held on February 16, 1993, West testified that during their incarceration at Angola Penitentiary, he and Gibson had frequently discussed and eventually concocted a plan to get out of prison. This plan culminated in Gibson's presentation of the affidavit to West for his signature and Gibson's application for post conviction relief. At the hearing, West represented for the first time that a man named George Carter, not Roland Gibson, was the triggerman. West stated he had not previously implicated George Carter because the Police beat him into submission of a statement implicating Gibson.[5]
The presiding judge granted Gibson's application for post-conviction relief, finding that the District Attorney withheld the supplemental police report which contained exculpatory Brady material in the form of West's numerous conflicting statements to Police and could have denied Gibson a fair trial. The judge ordered a new trial. The District Attorney, bereft of the testimony of its sole witness, West, entered a nolle prosequi as to Gibson's indictment on March 31, 1993. Thereafter, Gibson was released from prison.

Civil Trial
On February 12, 1993, the Plaintiffs, Roland Gibson, his wife and two sons, filed the instant civil suit against the State of Louisiana, Lloyd West, the New Orleans District Attorney's Office, and the City[6] seeking damages for false arrest and imprisonment, malicious prosecution, and personal injury in connection with Roland Gibson's twenty-five-year incarceration. The trial court found the State and District Attorney to be immune under La.Rev. Stat. 42:1441 A and dismissed all claims against them. On February 18, 1998, after a bifurcated trial, the trial court found the Police "did not have reasonable and trustworthy information sufficient to believe Mr. Gibson had committed a crime." The court rendered judgment awarding Plaintiffs a total of $11,674,624, with fault allocated ten percent to West and ninety percent to the City.
The City appealed, asserting the trial court erred in finding no probable cause existed for the arrest of Gibson, in holding the City was liable for damages allegedly occasioned upon Plaintiffs for Gibson's false arrest, conviction, and twenty-five year incarceration, and in allocating ninety percent of the fault to the City. The court of appeal, amended fault to include comparative fault of the District Attorney regardless of immunity as required by the La. Civ.Code art. 2323.[7] 98-1100 (La.App. *788 4 Cir. 2/24/99), 731 So.2d 379. The court of appeal found "the trial court erred in holding the Police, rather then [sic] the District Attorney, primarily liable for Gibson's wrongful conviction and incarceration" and re-apportioned forty-five percent of the fault to the State, forty-five percent to the City, and ten percent to West. The court of appeal affirmed the remainder of the trial court judgment. The City sought writs with this court.

STANDARD OF REVIEW
The proper standard of review is whether the trial court committed an error of law or made a factual finding which is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court's decision is reasonable in light of the record reviewed in its entirety, this court may not reverse even if we would have weighed the evidence differently. Id. Where there is no dispute of fact, the question of probable cause is a question of law. Crescent City Live-Stock Landing and Slaughter-House Co. v. Butchers Union Slaughter House and Live Stock Landing Co., 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887) (citingStewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116 (1878)). The facts of this case are not disputed, therefore, this court must determine whether the lower court was manifestly erroneous in finding the Police lacked probable cause to arrest Gibson.
Upon a thorough review of the trial transcript, record, and judgment, we find the trial court's judgment was not reasonable and that it committed manifest error in finding liability on the part of the City for false arrest.

LAW AND DISCUSSION
The main issue presented for review is whether a municipality, through its police department, may be held liable in tort for wrongful arrest after the arrestee has been indicted, prosecuted, found guilty, and convicted of the crime with which he was charged. Implicit in this inquiry is the question of whether the fact that the Plaintiff had been arraigned, indicted, and convicted based upon the criminal court's satisfaction that the probable cause standard was met conclusively proves probable cause existed at the time of the arrest. To examine this issue, we first will embark on an examination of the probable cause standard.

Probable Cause to Arrest
At the outset, we note without hesitation that no police officer should fear that doing his duty in good faith will subject him to liability. An officer satisfies his duty of good faith in making an arrest if the arrest is based on probable cause. Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Miller v. East Baton Rouge Parish Sheriff's Dep't, 511 So.2d 446, 452-53 (La.1987);State v. Wilson, 467 So.2d 503 (La.1985).
The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence required at trial, and credibility determinations are seldom crucial in deciding whether available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983); State v. Simms, 571 So.2d 145, 148 (La.1990). Probable cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 *789 L.Ed. 1879 (1949); Simms, 571 So.2d at 148. The probable cause standard recognizes that a degree of uncertainty may exist and that an officer need not have sufficient proof to convict but must have more than a mere suspicion. State v. Guidry, 388 So.2d 797 (La.1980); State v. Lehnen, 403 So.2d 683, 687 (La.1981); State v. Herbert, 351 So.2d 434 (La.1977). The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause. Lehnen, 403 So.2d at 687; State v. Phillips, 347 So.2d 206 (La.1977).
While verification may be required to establish probable cause where the source of the information seems untrustworthy, it is well established that the reputation of the accused, his opportunity to offer explanation, and the need for prompt action are all factors in determining whether unverified information furnishes probable cause. Miller, 511 So.2d at 452-53;Hibernia Nat'l. Bank v. Bolleter, 390 So.2d 842 (La.1980). However, admissions of criminal activity carry their own indicia of reliability sufficient to support a finding of probable cause. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Mena, 399 So.2d 149 (La.1981);State v. Welsh, 371 So.2d 1314 (La.1979); State v. Mena, 344 So.2d 357 (La.1976). Where a person confesses to a crime, the confession and implication of another is to be deemed highly credible and more reliable and trustworthy than previous statements disavowing any knowledge of the murder, because confessions are statements against penal interest. See Mena, 399 So.2d at 152.
Applying these precepts, as the trial court, we will determine whether the Police had probable cause to arrest Gibson. First and foremost, probable cause for the arrest and conviction were met to the satisfaction of the criminal court. The civil trial court re-tried the evidence upon which Gibson was convicted and apparently equated the standard of proof of probable cause with proof necessary to prove guilt at trial. However, this was not the duty nor the task before the trial court, and it appears the trial court misapplied that law.
In its reasons for judgment, the trial court asserted five reasons why it found the Police lacked probable cause to arrest Gibson: 1) the Police report detailed that a white male was "wanted for questioning only," a description which did not fit Gibson; 2) the Police reports did not mention two individuals were suspected of committing the crime; 3) there was no physical evidence against Gibson; 4) the Police believed West, a "convicted felon;" and 5) the Police failed to contact Greyhound to secure an alibi on Gibson's behalf.
After a thorough analysis of these points, we find no merit to any of the reasons for judgment and address each one in turn. First, the fact that the Police report contained the physical description of a white male wanted "for questioning only" does not refute the existence of probable cause for Gibson's arrest in light of other evidence against Gibson. The police report did not specify whether the white male was a suspect in the murder or merely a witness of some kind. Under State v. Phillips and State v. Lehnen, the Police do not need to eliminate all possible innocent explanations in order to support a finding of probable cause. For this reason, we find the trial court erred in this finding.
Second, we do not find compelling the trial court's desire for an "explanation in police reports as to why or when police [concluded] that the crime was committed by two individuals rather than one." The Police are not precluded from arresting those whom they reasonably believe to have committed a crime and need not restrict themselves to investigating, questioning or arresting only those individuals they have previously designated as suspects in their reports. As evidence avails itself, the Police are required to act on that evidence and arrest any individual they *790 reasonably suspect of having committed a crime. This is a basic tenet of the probable cause standard.
Third, regarding the trial court's requirement of physical evidence to arrest, clearly, just as an individual can be convicted solely on circumstantial evidence, so too can probable cause exist without physical evidence linking an individual to a crime. Under Beck v. Ohio and its progeny, the probable cause standard does not require the police to have direct, physical evidence; it only requires that the reasonable and trustworthy facts and circumstances within the arresting officer's knowledge are sufficient to justify a man of average caution in the belief that the arrestee has committed a crime. The trial court erred in requiring physical evidence to prove probable cause for the arrest.
Fourth, the trial court's repeated criticism of the Police for believing West's statements are disingenuous at best because the trial court later found West to be "a highly credible witness." The court cannot in one breath chastise the Police for their reliance on the statements of a "convicted felon" and in the next breath hold in high esteem the same individual's candor. Under State v. Mena, the most reliable and honest statement made by West in these entire proceedings is his 1968 confession and implication of Gibson in the murder. In light of all the reasonably reliable facts known to the Police at the time of the arrest,[8] the trial court erred in finding otherwise.
Lastly, the trial court censured the Police for not contacting Greyhound to substantiate Gibson's alibi. Under State v. Lehnen and State v. Phillips, the Police need not exhaust all innocent explanations in order for probable cause to exist. Furthermore, Gibson later admitted he was in town at the time of the murder, so the Police's alleged failure is irrelevant. The trial court erred in unjustifiedly placing this burden upon the Police.
Under our analysis, each of the trial courts' reasons for judgment fail and we find the civil trial court committed manifest error in re-determining the probable cause issue. Plaintiffs failed to prove that no reasonable police officer would have concluded probable cause was present.
All information known to the Police at the time of Gibson's arrest was sufficient to justify a man of ordinary caution in believing Gibson had committed a crime. See n. 8. Furthermore, probable cause was conclusively proven by Gibson's indictment and conviction in the criminal case. It is well settled that an indictment is conclusive proof of probable cause which connotes that probable cause existed for the underlying arrest. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Holmes, 388 So.2d 722, 724 (La.1980); State v. Howard, 325 So.2d 812 (La.1976); State v. Pierre, 606 So.2d 816, *791 820 (La.App. 3 Cir.1992);State v. Clark, 581 So.2d 747 (La.App. 4 Cir.1991); State v. Johnson, 529 So.2d 466 (La.App. 1 Cir. 1988). After indictment or conviction, the defendant can no longer allege lack of probable cause for his arrest. The jurisprudence of this state allows civil damages for false arrest only where there has been insufficient probable cause to sustain the arrest and the party has not been convicted of the crime with which they were charged. Winn v. City of Alexandria, 96-0492 (La.App. 3 Cir.1996), 685 So.2d 281; Miller, 511 So.2d at 451. Our research has indicated no reported cases where civil liability was found where the plaintiff was found guilty and convicted of the crime for which he later filed such a civil action.
Because the standard of proof for the determination of probable cause for a criminal case is more onerous than that for a civil case, it is, therefore, not the province of the civil court to later second-guess or redetermine this finding after the convict has been released, acquitted, or nolle prosequied. Absolute certainty of conviction is not the benchmark by which probable cause is determined, and we decline to go so far even where, as in this case, the conviction is later overturned and Plaintiff was not again convicted of the crime. Consequently, we conclude that probable cause existed at the time of Plaintiff's arrest and thereafter, notwithstanding the fact that plaintiff was granted post conviction relief and his indictment nolle prosequied.
Upon a thorough review of the record, we find the Police had probable cause to arrest Plaintiff. The trial court committed manifest error in finding the Police lacked probable. We, likewise, find the court of appeal erred in affirming the trial court. For these reasons, we reverse the trial court and court of appeal finding of fault on the part of the City for Plaintiffs judgment.

CONCLUSION
Based on the totality of the circumstances, the Police had probable cause to believe Gibson had committed first degree murder and were therefore justified in arresting him. The trial court and court of appeal erred in assessing any fault to the City. Therefore, we reverse the portions of the rulings of the civil court and court of appeal finding the Police liable for false arrest based upon a lack of probable cause.

DECREE
REVERSED.
LEMMON, J., concurs and assigns reasons.
CALOGERO, C.J., concurs and assigns reasons.
LEMMON, J., Concurring.
Although the majority frames the issue in this case as whether a party who has been convicted of a crime may recover civil damages based on his allegedly wrongful arrest, this decision should not be taken as holding that the conviction precludes recovery even if a wrongful arrest is proved.[1] The critical issue is whether the police had probable cause to arrest plaintiff at the time he was arrested, and not whether the State had sufficient evidence to convict him eight months after his arrest.
The majority correctly determines that there was probable cause to arrest plaintiff at the time of the arrest. However, if probable cause had not existed at the critical time and an investigation subsequent to the arrest had developed evidence to support the eventual conviction, plaintiff would be entitled to some amount of damages for wrongful arrest,[2] irrespective of *792 the fact that he was subsequently convicted.
CALOGERO, C.J., concurring.
Mistakes happen in our less-than-perfect criminal justice system. Occasionally, innocent people serve time. Some people serve their entire sentence, and others, after serving a portion of their sentence, find relief through conclusive proof of innocence, or through a post-conviction proceeding that is simply designed to maintain a fair system, not necessarily to establish innocence. In either event, proven innocence or faulty process in securing the conviction, the State, some other public institution, or public officers are sometimes sued for recompense for harm caused by wrongful conduct or negligence on the part of their agents.
Counterbalanced against the law's affording relief in the form of monetary damages arising out of failures in the criminal justice system is a fear that the State will be subject to a flood of litigation and huge judgments threatening to drain its resources for the negligence and misdeeds of criminal justice agents while performing their jobs, as well as the fact that exposure to damage awards may have a chilling effect on vigorous prosecutions. It is for this reason that the legislature has seen fit to grant immunity to the State for the damages caused by district attorneys within the course and scope of their official duties. La.Rev.Stat. 42:1441. Related to that determination by the legislature, this Court has ruled that a prosecutor is entitled to absolute immunity from malicious prosecution suits "when the activities complained of fall within the scope of the prosecutor's role as an advocate for the state and are intimately associated with the conduct of the judicial phase of the criminal process." Knapper v. Connick, 96-0434, p. 10 (La. 10/15/96), 681 So.2d 944, 950.[1]
On the other hand, State agencies or political subdivisions, e.g., municipalities, are not afforded the same immunity. Thus, in the instant case, although the State does not have to pay for bad or substandard district attorney conduct, the City has to pay for its police officers' actions, provided Plaintiff bears his burden of showing that his damages were a consequence of the police officers' negligence or other fault-based conduct.
In 1992, in response to Plaintiff's sixth application for post-conviction relief, Orleans Parish Criminal District Court Judge Calvin Johnson ordered a new trial for Plaintiff, not because of Lloyd West's, the coperpetrator's, seven-year-old recantation,[2] but rather, because of a Brady violation *793 in which Judge Johnson found that the district attorney had withheld exculpatory evidence contained in a supplemental police report. The judge, in granting Plaintiff relief, did not address the issue of whether the police officers had probable cause to arrest Plaintiff. Subsequently, the district attorney entered a nolle prosequi because of the problems associated with prosecuting a twenty-five-year-old murder without the benefit of key witness testimony. Plaintiff, therefore, won his freedom.
In 1993, at the civil trial, the result of which is now under review, with the State already dismissed from the suit because of its statutory immunity from damages caused by district attorneys within the course and scope of their official duties,[3] the trial judge premised the City's liability on the police officers' lack of probable cause to justify Plaintiff's arrest. It was at this late stage (the civil trial in 1993) that the civil court judge found probable cause lacking for Plaintiff's arrest. Consequently, the issues presented in this case in reviewing the judgment of the civil district court are (1) did the police officers have probable cause to arrest Plaintiff, (2) if not, were they at fault in arresting Plaintiff, and (3) are the officers liable, and the City vicariously liable, for Plaintiff's twenty-five years of incarceration, and was Plaintiff's impairment caused by the assumedly wrongful arrest.
I concur in the judgment in favor of the City because the law and the evidence do not support the district court's ruling in this civil case. If Plaintiffs arrest by the New Orleans Police Department was without probable cause, then that misdeed or police officer failure may have caused or contributed to Plaintiff's short, legally unsupportable period of confinement following his arrest. Following that brief period Plaintiff's arrest to the issuance of the indictmentthe district attorney alone, with the evidence assembled and during the conduct of the trial, was responsible for Plaintiff's prosecution and conviction.[4] Assuming Plaintiff was wrongfully arrested, and assuming the prosecutor procured Plaintiff's conviction and incarceration by misconduct or negligence on his part, the City would not likely be liable for more than a minimal sum for the short period of confinement prompted but the police officers' arrest without probable cause.
More significantly, however, the evidence in this case does not support the trial judge's determination that the police officers did not have probable cause to arrest Mr. Gibson for the armed robbery and murder of Charles Reinecke, Jr. Of course, a custodial arrest must be supported by probable cause. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Generally, probable cause for a warrantless arrest exists when the facts and circumstances known to an arresting officer are sufficient to justify a man of ordinary caution to believe that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); State v. Scales, 93-2003, p. 6 (La. 5/22/95), 655 So.2d 1326, 1333; La.Code Crim.Proc. *794 art. 213. This Court has made clear that "the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action." State v. Kalie, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880 (emphasis in original) (citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).
Although there may have been some evidence, gathered during the early part of the investigation, which did not implicate Plaintiff, other evidence did strongly point to Roland Gibson. On the negative side, the initial police report indicated that the police were looking for an unknown white male, twenty-five to thirty years old, five feet eleven inches tall, with blond hair for questioning. Nevertheless, on the positive side, the police had the evidence of Lloyd West's fingerprint found on the inside of the victim's cab and West's statement implicating Plaintiff as the gunman. Additionally, the police were able to corroborate these pieces of evidence with the statement of Thomas Crayton, who explained that he saw West and a friend named "Roland," an alleged AWOL Army soldier, which description fits Plaintiff, together in an apartment shortly before noon on December 30, 1967, just hours before the murder. Thus, the information available to the police at the time they chose to arrest Plaintiff established probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Accordingly, I agree with the majority opinion's conclusion that the City of New Orleans is not liable for Plaintiff's damages.

ON APPLICATION FOR REHEARING
PER CURIAM[**]
On application for rehearing, plaintiff raises two substantial issues:

Effect of Conviction on Recovery of Damages for False Arrest
Plaintiff takes issue with this court's statement on original hearing that an indictment is conclusive proof of probable cause to arrest and that the plaintiff in an action based on damages for false arrest cannot allege lack of probable cause for the arrest if the plaintiff had been indicted or convicted.[1] Plaintiff contends that this statement conflicts with the decision in Jones v. Soileau, 448 So.2d 1268 (La. 1984)("The crucial determination [in a malicious prosecution action] is whether [the defendant] had an honest and reasonable belief in the guilt of [the plaintiff] at the time he pressed charges")(emphasis added).
We need not resolve this issue. The challenged statement, made on original hearing, was not necessary to the decision, because probable cause did exist at the time of arrest, as noted in the majority and concurring opinions on original hearing. The only real question about the existence of probable cause at the time of arrest was whether Lloyd West's statement implicating defendant as the triggerman was coerced by the police.

West's Allegedly Coerced Statement
At the time of the arrest, the police had (1) the statement of Lloyd West implicating plaintiff as a participant with West in the murder and (2) corroboration for West's statement by the fact that West and plaintiff were seen together nine hours before the murder. If the police had an honest and reasonable belief in the accuracy *795 of the statement, they had probable cause to arrest plaintiff.
West testified in the present civil action that the police coerced him to implicate plaintiff by beating him and forcing him to make the statement, and the trial judge expressly credited West's testimony about the beating. If the police indeed beat West into implicating himself and plaintiff in the robbery and murder, then the police did not have a good faith reasonable belief in the accuracy of West's statement, which they used as a basis for probable cause to arrest plaintiff.
In the 1968 proceeding against West (that culminated in a plea bargain), West was represented by competent counsel, but his attorney did not move to suppress the confession, nor, as far as we can tell from the record, did West tell his attorney or the prosecutor, through his attorney, that he had been beaten into confessing. Furthermore, after West was sentenced, he had numerous opportunities to allege that his confession was compelled by force, yet failed to make such an assertion. For example, in West's 1985 affidavit asserting that he lied when he testified against Gibson in order to avoid a death sentence, West did not claim he was beaten into confessing. In fact, it appears the first time that West claimed he was beaten was four days after this suit for damages was filed by Gibson in 1993. Moreover, when West implicated himself and plaintiff in 1968 in the robbery and murder, the police had physical evidence (fingerprint) of West's involvement, but knew nothing about plaintiff or about any co-perpetrator, except that a person named Roland had been seen with West nine hours before the murder, There was no apparent motivation for the police to coerce West into implicating plaintiff as the triggerman, while there was a good reason for West to identify an accomplice as the triggerman in order to avoid the death penalty. West did avoid the death penalty by implicating plaintiff, but remained silent for more than twenty years about any bating by the police as his motivation for inculpating himself and implicating plaintiff. Significantly, the trial judge who granted post-conviction relief to plaintiff in 1993 did not do so on the basis that West's statement was coerced (although this evidence was presented to the trial judge), but granted relief because of a Brady violation.
On reconsideration, we conclude that the trial judge was manifestly erroneous in crediting West's 1993 recantation of his 1968 statement. Accordingly, the application for rehearing is denied.
NOTES
[*] JOHNSON, J., not on panel. See Rule IV, Part 2, § 3.
[1] AWOL is the military acronym for "absent with-out leave."
[2] The Army confirmed to the Police that Gibson was paid on December 29, 1967 and that he was AWOL as of 7:00 a.m. on the morning of December 30, 1967. The Army told Police that Gibson had not been seen on base after noon on December 29, 1967 and could have left any time thereafter.
[3] Later, West confessed that the gun was at his home. The gun was never retrieved.
[4] Gibson's reported prior appeals include State ex rel. Gibson v. Henderson, 258 La. 352, 246 So.2d 199 (1971); State v. Gibson, 271 So.2d 868 (La.1973);State ex rel. Gibson v. Blackburn, 383 So.2d 794 (La.1980); State ex rel. Gibson v. Blackburn, 479 So.2d 360 (La. 1985); Gibson v. State, 94-0476 (La.App. 4 Cir. 10/27/94), 644 So.2d 1148.
[5] The trial court, in its reasons for judgment, mentioned Gibson's contention that West was beaten into submitting the confession wherein he implicated Gibson. The court then repeatedly criticized the Police for believing West, a "convicted felon," over Gibson. The trial court would not have criticized the Police for believing West over Gibson if it found that the Police had forced the confession. Following the trial court's criticism of the Police to its logical conclusion, we must find that the trial court was not convinced that West was beaten.
[6] Also named were a fictitious Assistant District Attorney and a fictitious insurance company, who are no longer parties to this suit.
[7] Art. 2323(a) provides in pertinent part:

In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute.... (Emphasis Added)
[8] The following facts were known to the Police at the time of the arrest and upon which they based that arrest: West implicated Gibson in his confession which was, as earlier discussed, properly regarded by the Police as highly credible under State v. Mena, regardless of West's prior false statements. This alone provided Police sufficient probable cause to effect a valid arrest. Further fortifying the existence of probable cause for the arrest, the Police received information from Mr. Crayton and the Army that corroborated the Police's belief that Gibson was in New Orleans and with West on the day of the murder. Gibson had no valid alibi and those he attempted to provide Police never materialized. The witnesses' statements against Gibson were uncontradicted and further bolstered the Police's reasonable belief that Gibson was involved in the murder, providing probable cause. As previously discussed, the trial court erred in finding West's inconsistent statements and confession negated the existence of probable cause for Gibson's arrest. It is not uncommon for an accused to deny guilt when first questioned by the Police. However, we consider the information provided by West in his confession to be more reliable and trustworthy than his previous conflicting statements because his confession was a statement against penal interest which carried its own indicia of reliability sufficient to support a finding of probable cause.
[1] If the conviction was a determinative bar to recovery, it would not be necessary to discuss whether probable cause existed at the time of the arrest.
[2] Of course, the amount of damages in such a case would not be significant, inasmuch as plaintiff's only damages would be for being arrested a few days or weeks earlier than he legally could have been arrested.
[1] Likewise, prosecutors sued for alleged civil rights violations under 42 U.S.C. § 1983 have absolute immunity for acts done within the scope of the prosecutors' duties during criminal prosecutions. Imbler v. Pachtman, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128, 142 (1976). However, prosecutors do not have absolute immunity, although they may have qualified immunity, for their misconduct in fabricating evidence and shopping for a favorable expert witness to establish probable cause for arrest because those acts are "administrative" rather than quasi-judicial. Buckley v. Fitzsimmons, 509 U.S. 259, 276, 113 S.Ct. 2606, 2617, 125 L.Ed.2d 209, 228 (1993). Furthermore, the United States Supreme Court has recognized that police officers have qualified immunity from 42 U.S.C. § 1983 liability for wrongful arrests. Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In Malley, the Court held that police officers are not immune if a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. Malley, 475 U.S. at 345, 106 S.Ct. at 1098, 89 L.Ed.2d at 281.
[2] On January 28, 1968, approximately one month after Charles Reinecke, Jr.'s murder, the police matched a partial fingerprint found on the left rear window of the victim's taxicab with Lloyd West's fingerprint. Subsequently, on March 29, 1968, following a polygraph test that indicated "deception," Lloyd West finally admitted his involvement in Reinecke's murder, but was adamant that Plaintiff was his accomplice and was the triggerrnan. At Plaintiff's criminal trial, West testified that Plaintiff was the gunman.

In 1985, Lloyd West, who was (and remains to this day) incarcerated since 1968 after pleading guilty to first degree murder and sentenced to life imprisonment for Reinecke's murder, signed an affidavit produced by Plaintiff wherein West swore that he lied at P/'s trial regarding Plaintiff's involvement in the murder "in order to bypass the electric chair."
[3] On October 27, 1994, the Louisiana Fourth Circuit Court of Appeal affirmed the trial judge's dismissal of the State based on the State's exception of no cause of action. The Fourth Circuit ruled that "The District Attorney's Office is not the State and the State is not liable for the acts of the District Attorney or his employees. See, La.Rev. Stat.Ann. § 42:1441(A) (West 19990)." Gibson v. State of Louisiana, 94-0476, p. 5 (La.App. 4th Cir. 10/27/94), 644 So.2d 1148, 1150.
[4] In this regard, that is, district attorney fault, Criminal District Court Judge Johnson's finding of a Brady violation has relevance.
[**] Johnson, J., not on panel. Rule IV, part II, § 3.
[1] The statement that "[a]fter indictment or conviction, the defendant can no longer allege lack of probable cause to arrest" is clearly correct in a criminal proceeding in which the accused, after conviction, contends an appeal that the trial court erred in finding probable cause at the preliminary examination. See State v. Sweeney, 443 So.2d 522, 531 (La. 1983).