LEHMAN ROSS & PATRICIA ST. ANGELO
v.
BATON ROUGE CITY POLICE DEPARTMENT, DISTRICT ATTORNEY DOUG MOREAU, POLICE CHIEF PAT ENGLADE, CITY OF BATON ROUGE, OFFICER ROBERT E. GANN, OFFICER MATTHEW JOHNSON, SERGEANT FRANKLIN WOLFANGER & SERGEANT MILTON D. REED.
No. 2009 CA 0360.
Court of Appeals of Louisiana, First Circuit.
October 27, 2009.
NOT DESIGNATED FOR PUBLICATION
ARTHUR HANNIBAL JOINER, Counsel for Plaintiffs/Appellants, Lehman Ross & Patricia St. Angelo.
JAMES L. HILBURN, Counsel for Defendants/Appellees City of Baton Rouge, Milton Reed, Matthew Johnson, Frank, Wolfanger & Robert Gann.
R. CHRISTOPHER NEVILS Counsel for Defendant/Appellee, District Attorney Doug Moreau .
Before: DOWNING, GAIDRY and McCLENDON, JJ.
DOWNING, J.
Plaintiffs-appellants Lehman Ross and Patricia St. Angelo appeal a judgment that granted the motion for summary judgment filed by the Baton Rouge City Police Department, Police Chief Pat Englade, and police officers Robert E. Gann, Matthew Johnson, Sgt. Franklin Wolfanger, and Sgt. Milton D. Reed (collectively, City Police)[1] and thereby dismissed those defendants. For the following reasons, we affirm the trial court judgment.

PERTINENT FACTS AND PROCEDURAL HISTORY
Mr. Ross and Ms. St. Angelo were arrested for carjacking and simple kidnapping of Sonya Boss on June 17, 2001, based partly upon the identification of Cleveland Johnson, an alleged eyewitness. Ultimately, the charges against Mr. Ross and Ms. St. Angelo were dismissed.
Mr. Ross and Ms. St. Angelo filed suit against the defendants on June 14, 2002, claiming false arrest, malicious prosecution, and violation of various constitutional rights. The City Police filed a motion for summary judgment, which was granted. In granting the summary judgment, the trial court stated in its oral reasons for judgment: "[T]he question is not whether Cleveland Johnson was telling the truth when he said he saw [the plaintiffs]. It's not a question of whether Ms. St. Angelo and Mr. Ross committed the carjacking. The only question in this case is, whether the officers had probable cause to arrest these people at the time." The trial court further explained that "there was circumstantial evidence. They were in the area. They admitted being in the area of the carjacking. They were found in the area where the carjacking terminated. ... There was positive identification, by Cleveland Johnson, that they were the two people who got out of the car after the accident and walked away."
Judgment was signed on November 18, 2008, and from that judgment this appeal arises.

STANDARD OF REVIEW
Reviewing courts review summary judgment de novo, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Cutsinger v. Redfern, 08-2607, p. 4 (La. 5/22/09), 12 So.3d 945, 949. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSC.C.P. art. 966B.

DISCUSSION
The only issue on appeal is whether there is a genuine issue of material fact as to whether the police had probable cause to arrest Mr. Ross and Ms. St. Angelo. In order to prevail in a suit for false arrest and malicious prosecution, plaintiffs must sustain their burden of proof to show that the criminal proceeding was initiated or continued without "probable cause." Miller v. EAST BATON ROUGE SHERIFF'S DEPT., 511 So.2d 446, 452 (1987).[2] Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer, of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person being arrested has committed the crime. Id.

OVERVIEW OF THE EVIDENCE

Sonya Boss, the Crime Victim
Sonya Boss testified at the preliminary examination on April 24, 2002. She said that while she was stopped at a red light at the Government Street and I-10 intersection, an unknown person got into the driver's side front seat of her car. She said that she never looked at the carjacker's face, but did notice that his hands were black. She said that she also heard the back door open and close, but only assumed someone got into the backseat. She said they had traveled only a short distance when the car spun out of control and came to rest on the grassy shoulder at the Washington Street off ramp.
The following aspects of Ms. Boss's testimony are pertinent:
(1) She said that immediately after the car came to a stop, she heard her car doors open and the person or persons leave the vehicle and run off.
(2) She said that she sat in her vehicle for a few seconds before getting out.
(3) She said that when she got outside of the car, nobody was around to help her.
(4) She said the car could not be driven because it had a flat tire, so she walked the short distance home and called the police.
(5) Ms. Boss said she never saw the carjackers nor did she see any other person who may have witnessed the incident.
Ms. Boss testified that shortly after she arrived home the police called and asked her to return to the car in hopes of identifying the two suspects who were being taken to the scene. Ms. Boss said that she was unable to identify the suspects. Ms. Boss said the officers told her Cleveland Johnson had witnessed the accident. She reiterated that she told the officers that she had never seen the alleged witness or anybody else after leaving the car or during the five minutes it took her to walk home. She testified that her car was not impounded for evidence. In fact, the police helped her husband change the tire so they could drive the vehicle home.

Cleveland Johnson, the Alleged Eyewitness
The only evidence from this alleged eyewitness, Cleveland Johnson, is an affidavit, signed nearly seven years after the incident and filed with defendants' motion for summary judgment.
In his affidavit Mr. Johnson stated that on June 17, 2001, "he was a witness to an automobile accident and observed a black male and a white female get out of the car and start walking east on Washington Street towards Dalrymple Drive." He averred that he gave the police officer a physical and clothing description of those two people. He also said that a short while later, Baton Rouge Police officers brought a black male and a white female to the scene of the accident, and he positively identified them as the subjects he saw get out of the vehicle and walk east on Washington Street. The affidavit did not mention whether he did or did not see Ms. Boss.

Matthew Johnson, the Arresting Officer
Officer Matthew Johnson stated that he based his arrest of Ross and St. Angelo on three factors:[3]
(1) The eyewitness identified Ross and St. Angelo as the people he saw getting out of the victim's vehicle;
(2) The description of the suspects; and
(3) A statement Ms. St. Angelo allegedly made to him while she was being transported in the back of his police car.
Regarding the witnesses identification, the officer testified that he picked up Ms. St. Angelo and Mr. Ross walking around the L.S.U. lakes after hearing a dispatch report that a white female and a black male were possible suspects in a carjacking in the area. He admitted that he probably would not have stopped them had he not heard their description on the radio. He said Ms. St. Angelo was taken to the scene in the back of his car, and another officer took Mr. Ross. When they arrived, another officer told him that an eyewitness, Cleveland Johnson, had witnessed the accident. The other officer said that Cleveland Johnson told them that he saw a black male and a white female abandon the vehicle. Even though Cleveland Johnson claimed to witness the accident, there was no report that he saw Ms. Boss leave the vehicle. Cleveland Johnson next said he stopped and asked if they needed help; they ignored him and kept on walking down Washington St. toward Dalrymple. The officer said that Mr. Johnson positively identified Mr. Ross and Ms. St. Angelo as the two people he saw leaving the subject vehicle.
Officer Johnson also testified that he talked to the victim, Ms. Boss, and was aware that she did not see the alleged eyewitness when she exited her vehicle. The officer did not comment about the discrepancies between the eyewitness's account of the events and the conflicting victim's account.
Regarding Ms. St. Angelo's utterance, he explained that either after stopping Ms. St. Angelo and before she was put into his car, or while Ms. St. Angelo was detained in the back of his police car, after being driven to the scene of the accident, he asked her about the keys to the vehicle. He said she responded by saying that they "did not take that lady's car." He added that he thought he had not mentioned it was a lady's car that had been carjacked.

ANALYSIS
At the outset, we reiterate the Louisiana Supreme's proclamation in Gibson v. State, 99-1730 (La. 4/11/00), 758 So.2d 782, 788-89: "We note without hesitation that no police officer should fear that doing his duty in good faith will subject him to liability. An officer satisfies his duty of good faith in making an arrest if the arrest is based on probable cause. Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing the offense. Id. at 788. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence. Id. The officer need not have sufficient proof to convict, but must have more than a mere suspicion. Id. at 789. While verification may be required to establish probable cause where the source of the information seems untrustworthy, it is well established that the reputation of the accused, his opportunity to offer explanation, and the need for prompt action are all factors in determining whether unverified information furnishes probable cause. Id and 789.
Based on Officer Johnson's three bases for finding probable cause, we conclude that no questions of fact regarding his subjective knowledge exist sufficient to preclude summary judgment. These bases were:
(1) the "eyewitness" identification;
(2) the physical description;
(3) the alleged utterance.
Regarding the "eyewitness" identification, the alleged eyewitness said, that he observed the accident and saw a black male and white female leave the car and walk away down Washington Street toward Dalrymple. He, however, did not report seeing the victim leave the car, nor which doors the suspects exited from. Conversely, the victim testified that she promptly left the car after the carjacker(s) left but did not see the eyewitness or anyone else.
Regarding the description of the suspects, Officer Johnson could only say that it was a black male and white female, but that he had no recollection and kept no record of the description that was supposed to match the suspects. Therefore, a factfinder could not use the description as a factor to determine whether the officer had probable cause.
Regarding the alleged utterance, Officer Johnson thought, but was not positive, he never mentioned it was a lady's car that was stolen before Ms. St. Angelo declared "they did not take that lady's car." When asked if he could have said "where are the keys to the lady's car?" (Emphasis added), the officer responded that it was possible and that he was "not 100 percent sure." He then reiterated that it was possible that he did mention that "the lady's car." Ms. St. Angelo, however, vehemently denies that she made any such proclamation. Further, the record contains no report including Ms. St. Angelo's alleged utterance.
Moreover, all of the police officers at the scene testified that the suspect's versions of events were not investigated before the individuals were arrested.
Based on the evidence and observations, we conclude that no questions of fact exist as to whether the information used to arrest Mr. Ross and Ms. St. Angelo was sufficient to justify a man of average caution in the belief that these individuals had committed the crimes for which they were being arrested. Based upon the totality of the evidence, we conclude that there are no genuine issues of material fact which would preclude the entry of summary judgment in this matter.

DECREE
For the above reasons, we affirm the trial court judgment. The cost of this appeal is assessed against Lehman Ross and Patricia St. Angelo.
AFFIRMED
NOTES
[1] The District Attorney, Doug Moreau, was named in the lawsuit, but was not included in the Motion for Summary Judgment.
[2] An action for malicious prosecution in a criminal proceeding lies in all cases where there is a concurrence of the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding: (3) its bona fide termination in favor of the present plaintiff (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff. Id. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Id. at 453.
[3] In other testimony Officer Johnson only identified two bases: the eyewitness identification, and Ms. St. Angelo's alleged statement.