520 So.2d 447 (1988)
STATE of Louisiana
v.
Anthony CHAMPAGNE.
No. 87-KA-490.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
Rehearing Denied March 17, 1988.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Peter D. Derbes, New Orleans, for defendant-appellant.
Before CHEHARDY, C.J., and DUFRESNE and WICKER, JJ.
WICKER, Judge.
Anthony Champagne, defendant, was found guilty of disturbing the peace in violation of L.S.A.-R.S. 14:103 A(3).[1] Thereafter, defendant was sentenced to pay a fine of $50.00 plus costs. Writs were *448 taken to this court and we granted defendant's application, ordering that the case be docketed by established appellate procedure.
The testimony set out the following: Officer Jules Pinero testified that on Mardi Gras Day, February 11, 1986, he was assigned to work in the Fat City area of Jefferson Parish. At approximately 5:45 p.m. he and agent Baker, while in police uniform, walked near the Sheriff's Office Temporary Holding Compound when he observed the defendant beating on the rear of a car.
The car was a police car, a K-Nine car, containing a dog. The dog was at the back window barking at the defendant. Both he and Baker told the defendant to stop beating on the window. However, the defendant stated that he only wanted to "play" with the dog, and refused to leave.
The dog was alone in the closed car. Pinero admitted that he didn't know whether the defendant was trying to calm the dog or whether the dog had been barking before the defendant approached the car.
As Pinero neared the defendant he smelled alcohol on the defendant's breath. Although Champagne had a beer can in his hand, Pinero did not actually observe him drinking. Baker removed the can from the defendant's hands. Thereafter Champagne pushed the officers away. He was placed under arrest. Champagne continued to pull away from the officers, swinging and kicking at them as he was escorted toward the compound. Other officers in the compound assisted Pinero and Baker in handcuffing the defendant and placing him in a holding cell.
Sergeant John Devlin testified that he was in the compound on the date in question. He heard the defendant pound on the glass and the dog starting to bark. However, before he could tell the defendant to stop banging, he saw Pinero and Baker approaching. He saw Baker take a can from the defendanthe did not know whether the can contained beer. Then he saw the officers grasping the defendant as they led him into the compound.
During this time the defendant was resisting and kicking. When Devlin and other officers moved to assist Pinero and Baker a scuffle ensued. When asked why he wanted to stop the defendant from pounding on the car, Devlin answered:
Because the K-Nine dogs, if they have to be used in the area, it was Carnival Day, and if this dog is agitated, you know, it is probably going to grab some people that it shouldn't. you know. I don't know that for a fact, but that was my thought on the matter, you know, and the gentlemenhe wasyeah, what he was doing was aggravating the dog, is what he was doing, you know, there was no need for it, wasn't called for.
On the other hand, the defendant testified as follows: On that date, he had been drinking beer and decided to leave his family and friends in order to take a walk in Fat City. From 10:00 that morning to the time of the incident he drank over a six-pack of beer. On his return to his friends, from his walk, he decided to walk down a deserted street while carrying a beer can in his hands. He saw a police car with a dog inside and some officers further away. As he bent to look inside the car to look at the dog, one of the officers yelled at him to move away. He did not touch the car. He did, however, observe the dog moving and barking.
He walked toward the police officers and told them that they had a pretty dog. He was grabbed and handcuffed. The beer can was knocked out of his hand. When he asked why he had been arrested Baker punched him in the face and Pinero hit him in his chin with his night stick, breaking his jaw. He denied doing anything to resist the officers or to agitate the dog. He was treated at East Jefferson Hospital for his broken jaw.
At the close of the state's case the defendant filed a motion for a directed verdict. The motion was granted as to count two, simple battery of Police Officer Baker who was not present to testify. It was denied on the remaining two counts of simple battery of police officer Pinero and *449 disturbing the peace by appearing in an intoxicated condition.
When trial concluded, the trial judge found the defendant not guilty of count one, simple battery of police officer Pinero, but guilty of count three, the disturbing the peace charge. The defendant was sentenced to a fine of $50.00 plus costs.
Defendant now assigns the following errors:[2]
1. That the trial court erred as a matter of law in convicting appellant of disturbing the peace by appearing in an intoxicated condition, on the strength of proof which the court itself characterized as showing appellant was only `probably intoxicated' at the time of the alleged offense, and
2. That the trial judge erred in denying appellant's motion to dismiss urged at the close of the state's case and reurged at the conclusion of all of the evidence.
The argument raised by these assignments is that insufficient evidence exists to support the defendant's conviction. First, the defendant contends that the trial judge did not apply the "beyond a reasonable doubt" standard in finding the defendant guilty of the crime. Second, he alleges that the evidence does not support the conviction. We agree.
In finding the defendant guilty of L.S. A.-R.S. 14:130 A(3), the trial court stated in pertinent part that:
It's just the strangest thing in the world. Mr. Champagne has obviously a good record. He has never been arrested before. He hasn't been in any serious trouble in his life before. I have a feeling it is just too many beers Mardi Gras morning. That's how I feel ... I think Mr. Champagne, in my opinionfirst of all I find him guilty of being intoxicated in public. Public being at least the policemen, if nothing else on the street. I am sure there must have been other people on the street. So, I find Mr. Champagne guilty of being intoxicated in public, appearing in public in an intoxicated condition. Based upon the testimony of Officer Pinero and his actions, I just can't assume that the officers who never saw the man before, who never had any acquaintance with him before, just made up this story, you know. I do think they are objective in their profession. I presume that there have [sic] been no prejudice shown on their part against Mr. Champagne. So, I can't imagine that they would make up this story. I do think that he was intoxicated in public or under the influence of alcohol in public. All right. and therefore, I find him guilty of that. [Emphasis supplied].
When discussing the charge of battery of Officer Pinero, the trial judge further stated:
I don't think from the way the testimony of the officers was given that the man if he was intoxicated, I don't think that he intentionally tried to slug the officers as they say, or try to hurt them. I think he was probably intoxicated and he was probably trying to push his way out of a situation that he got himself into. [Emphasis supplied].
Finally, in sentencing the defendant, the trial judge stated that he found the defendant "guilty of disturbing the peace by appearing drunk in public."
In this case the defendant was convicted of disturbing the peace in violation of L.S. A.-R.S. 14:130 A(3) which provides:
Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:
* * * * * *
(3) Appearing in an intoxicated condition[.]
It is evident from the trial judge's findings outlined above that he was not convinced beyond a reasonable doubt that *450 Champagne appeared in an intoxicated condition. In addition, he concluded that Champagne was "guilty of disturbing the peace by appearing drunk in public." However, even assuming that Champagne was found guilty beyond a reasonable doubt of "disturbing the peace by appearing drunk in public" that finding only satisfies one prong of a two-pronged requirement for guilt pursuant to L.S.A.-R.S. 14:103 A(3). The trial court must also find him guilty of "disturbing the peace ... in such a manner as would foreseeably disturb or alarm the public." L.S.A.-R.S. 14:103 A(3).
The trial judge merely concluded that Champagne was guilty of appearing intoxicated in public. Such a conclusion, even if based upon the correct standard of proof, is insufficient alone to support a conviction pursuant to L.S.A.-R.S. 14:103 A(3).
The proper standard to be used by the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of each element of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Brooks, 505 So.2d 714 (La. 1987). Even the evidence in this case does not show that a rational trier of fact could have found the defendant guilty of each element of the crime charged beyond a reasonable doubt.
The evidence to show that the defendant was intoxicated consisted of the testimony of Officer Pinero, who testified that the defendant was holding a beer can, that his breath smelled of alcohol and that he "appeared intoxicated." The defendant admitted to consuming over six cans of beer from 10:00 a.m. to 5:45 p.m. In addition, the defendant was approached by the officers because he was hitting the rear window of a police unit which contained a barking dog.
We can find no jurisprudence defining what constitutes an intoxicated condition to find a defendant guilty of disturbing the peace. Accordingly, this element is analogized to the element of intoxication which must be proven to sustain a conviction for driving while intoxicated in violation of L.S. A.-R.S. 14:98. In order to support a guilty verdict to a charge of D.W.I., the evidence must show that the defendant was "operating... any motor vehicle ... when (1) ... under the influence of alcoholic beverages." L.S.A.-R.S. 14:98; State v. Fontenot, 408 So.2d 919 (La.1981).
The behavioral observations attendant to intoxication may be testified to by witnesses. State v. Allen, 440 So.2d 1330, 1334 (La.1983); State v. Beeland, 487 So.2d 703 (La.App. 5th Cir.1986). The behavioral manifestations which are sufficient to support the element of intoxication in a D.W.I. charge must be determined on a case by case basis. City of Alexandria v. Webster, 490 So.2d 747 (La.App. 3rd Cir.1986).
In Webster, supra there were more behavioral manifestations present than in the case at bar, yet that evidence was insufficient. In Webster, supra, the defendant's speech was fair, his alcoholic breath odor was moderate, he was talkative, and when he was administered a field sobriety test he swayed. Furthermore, he skipped five letters when asked to recite the alphabet.
In this case, Officer Pinero gave no description as why the defendant appeared intoxicated. Thus, the evidence adduced shows only that the defendant's breath smelled of alcohol; that he fought when the officers approached him; that he admitted to drinking over a six-pack of beer from 10:00 a.m. to 5:45 p.m., and that he held a beer can in his hand. No description regarding such behavioral manifestations as manner of speaking or walking was given by the officers.
The state in brief, however, argues that it need only prove that the defendant "appeared" intoxicated. We do not agree. The provision "appeared in an intoxicated condition" contained in L.S.A.-R.S. 14:103 A(3) is to be given a "genuine construction, according to the fair import of [its] words, taken in [its] usual sense, in connection with the context, and with reference to the purpose of the provision." L.S.A.-R.S. 14:3.
*451 Taken in its usual sense, this element of the crime is satisfied when the defendant is present in public while intoxicated, and not when he merely looks like he is intoxicated.
In applying the Jackson, supra standard, we find that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the defendant guilty of the two elements of the crime charged beyond a reasonable doubt. Not only do we find insufficient evidence with regard to the element of "appearing in an intoxicated condition", we also find insufficient evidence that the defendant acted in such a manner as would "foreseeably disturb or alarm the public." Jackson, supra; L.S.A.-R.S. 14:103 A(3).
The phrase "foreseeably disturb or alarm the public" has been jurisprudentially defined:
In State v. Heck, 307 So.2d 332 (1975), this Court approved the United States Supreme Court's interpretation of the phrase "[as would] foreseeably disturb or alarm the public" in Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). In Garner, the Court, after examining the Louisiana jurisprudence, concluded:
"[T]hese words encompass only conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance." (82 S.Ct. at 253)
Today we reaffirm this interpretation. State v. Jordan, 369 So.2d 1347, 1350 (La. 1979).
In the instant case the defendant was hitting the window of a K-Nine unit, causing the dog inside to bark. The doors of the unit were closed, therefore, the dog could not exit the vehicle. The conduct of banging on the police unit with a fist is not violent or boisterous in itself. Additionally, since the dog was secure, it is doubtful that the defendant's conduct would induce a foreseeable physical disturbance.
The trial court did not even think that the crime had been proven beyond a reasonable doubt even after hearing all of the circumstances attendant to Champagne's actions, (a Mardi Gras Day in which drinking on the street is condoned), as well as the evidence adduced.
Viewing the evidence most favorably to the prosecution, we find that the record is inconclusive as to defendant's guilt pursuant to L.S.A.-R.S. 14:103 A(3). The evidence is took weak to prove guilt beyond a reasonable doubt.
Since the evidence fails to establish guilt beyond a reasonable doubt, the trial court erred in finding the defendant guilty of violating L.S.A.-R.S. 14:103 A(3). Accordingly, we reverse defendant's conviction and his sentence is vacated with orders to discharge defendant.
REVERSED AND RENDERED; SENTENCE VACATED.
NOTES
[1] Although Champagne was charged with two counts of simple battery of a police officer in violation of L.S.A.-R.S. 14:34.2, he was only convicted on the charge of disturbing the peace. The trial judge found insufficient evidence to convict on the battery charges.
[2] We have also examined the record for patent error. Although we find error patent in the failure of the trial court to provide a signed written judgment of the disposition or an equivalent to a signed written judgment (i.e. commitment), State v. Jones, 517 So.2d 402 (La.App. 5th Cir.1987) and the cases cited therein, we pertermit an error patent discussion since we find reversible error for the reason stated.