945 So.2d 752 (2006)
STATE of Louisiana
v.
Shane M. CHAUVIN.
No. 06-KA-362.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
*754 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Thomas Block, Churita S. Hansell, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
*755 Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and GREG G. GUIDRY.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On August 19, 2004, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant, Shane M. Chauvin, with possession of cocaine, a violation of LSA-R.S. 40:967(C). At his arraignment, the defendant pled not guilty. The defendant filed an omnibus motion, which included a Motion to Suppress Confession, Identification, and Physical Evidence. In the motion, the defendant alleged that the evidence was unlawfully seized. After a hearing, the trial court denied the motion to suppress. On January 13, 2005, the defendant withdrew his not guilty plea, and entered a plea of guilty as charged pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to a review of the trial court's denial of his motion to suppress. The defendant was sentenced to two years at hard labor, which was suspended, and placed on two years active probation. As conditions of his probation, the defendant was ordered to pay court costs of $398.50, a fine of $300.00, a juror assessment of $20.00, a Crimestoppers fee of $2.00, a commissioner's fee of $100.00, a special fine of $150.00 to the "I Can Help" drug program, and a minimum supervision fee of $55.00 per month to the Department of Probation and Parole plus a $5.00 assessment. In addition to these general probation conditions on the Conditions of Probation-Felony form, the defendant was ordered to complete 100 hours of community service within 90 days and write a three-page hand-written essay entitled "Why I Should Not Commit A Crime" to be read in open court.

FACTS
The Supervisor of the City of Kenner Police Department's Narcotics Section, Sergeant Nicholas Huth, testified that, on July 28, 2004, he was working a narcotics operation, while parked in the lot at 2401 Veterans Boulevard, in Kenner. This location contains a pain management clinic and a pharmacy. Sergeant Huth testified that the narcotics unit received complaints of narcotics use and sales from business owners of the complex. Crimes have taken place at the complex involving individuals who come to the pharmacy to pick up pills and then to sell the pills in the parking lot. Sergeant Huth testified that there have been other related crimes at the complex involving weapons and many arrests. On the day in question, he observed Shane Chauvin, whom he identified in court as the defendant "racing around" the second floor of the parking lot approaching patrons of the businesses and handing them an object. He decided to investigate the defendant, because his actions were extremely suspicious, and his "loud" behavior alarmed the people he approached. Sergeant Huth continued to observe the defendant for eight or nine minutes as he approached people. During this time, Sergeant Huth had two employees of businesses approach him and point out the defendant. These employees informed him that the defendant's actions were causing alarm to them, as well as the businesses' patrons. Sergeant Huth approached the defendant, and informed him that he felt that his actions were extremely suspicious. The defendant was "extremely excitable or jumping [sic] moving back and forth. . . ." He talked to the defendant, whom he described as loud, excited, and boisterous. Sergeant Huth believed that *756 the defendant's behaviors were caused by the influence of narcotics. Sergeant Huth admitted that most people are nervous when they encounter the police. However, he claimed that he did not stop the defendant because of nervous behavior.
According to Sergeant Huth, he investigated and found out that the objects that the defendant was passing out were cards that could be used to obtain a discount at another Jefferson Parish pain management clinic. Later, Sergeant Huth admitted that when he observed the defendant approaching the patrons he saw that the defendant was handing out cards. Sergeant Huth conducted a Terry[1] pat down of the defendant. Initially, when asked if he conducted a Terry pat down for his safety and the safety of others in the vicinity, Officer Huth replied that he conducted a Terry pat down, because "a lot of people [officers] deal with around there have needles and other objects on them that could harm me or somebody else but specifically me. . . ." Later, Sergeant Huth testified that previously other individuals had pills, knives, and other weapons; therefore, he conducted the pat down for his safety and that of the public. The defendant was not handcuffed during the pat down. Sergeant Huth testified that during the pat down, he felt an object, in the defendant's right pocket, and it was "immediately apparent to [him] that it was possibly a joint, a marijuana joint, what felt like a marijuana joint." Sergeant Huth immediately knew the object was not a needle, knife, or other weapon when he patted the defendant down. Sergeant Huth admitted that when he removed the object it was not a marijuana joint. Rather, it was a folded or "wrapped up" dollar bill containing a piece of cellophane or plastic that contained a substance that was field-tested positive for cocaine. When questioned, Sergeant Huth testified that he initially thought the dollar bill contained a marijuana joint. Later, he agreed that he had encountered people, who concealed narcotics in money and other objects. Sergeant Huth admitted that when he took the dollar bill out of the defendant's pocket all he could see was the way it was folded. He did not know what was inside of the dollar bill after he removed it, because he could not see anything. However, he knew the folded dollar bill was not a knife, gun, or other weapon. The defendant was placed under arrest for the narcotics violation. Sergeant Huth claimed that he could have arrested the defendant prior to the pat down and drug discovery for disturbing the peace.
The defendant testified that, on July 28, 2004, he was passing out business cards to recruit patients, at 2401 Veterans Boulevard. On his way to the pharmacy located upstairs, he approached a woman fifty-five years or older, and asked if he could give her a card. She took off running for no apparent reason. Then, he spoke to a man about the Omni Pain Clinic. Next, he went into the pharmacy and handed out cards to five people, "did the speech thing," and left. The woman who ran off earlier was standing there, next to another woman in scrubs, who informed him that there was a pain management clinic right next door. As he was about to get into a car parked on a side street, Officer Huth ran up to him, and told him to freeze and to put his hands on top of his head. Officer Huth never told him why he was stopped. The defendant consented to a pat down search for safety reasons. He was not handcuffed during the search. The defendant admitted that he had a single dollar bill folded in the right watch pocket of his pants. However, he did not *757 know it contained cocaine, because he picked up the folded dollar bill off the ground and stuck it in his pocket. He told this to the officer at the scene.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues the trial court erred in failing to grant the defense's motion to suppress the evidence because the evidence was illegally retrieved. The defendant contends the State did not prove that the dollar bill containing cocaine was lawfully seized from him. He claims that the continued search of the folded dollar bill exceeded the scope of a Terry pat down, because the police officer knew that the object was neither a weapon nor a marijuana joint, as he originally suspected. He claims that the search was not justified under the plain-feel exception, because the item was not immediately identifiable as contraband.
The State argues that Sergeant Huth, an officer with eighteen years of experience, investigated the defendant because he believed his actions were suspicious, and conducted a pat down of the defendant because he was concerned that the defendant had a weapon or a needle that could be used as a weapon. In addition, the defendant was at a location previously involved in complaints of criminal activity. The State contends that the aforementioned reasons created a substantial probability of danger, which necessitated the need for the pat down. During the pat down, Sergeant Huth thought he felt a marijuana cigarette, but, after removing it, he found a dollar bill folded to conceal cocaine. Sergeant Huth testified that narcotics are sometimes concealed in currency in this fashion. Therefore, the State claims that the warrantless seizure of the contraband was justified under the plain view doctrine. Alternatively, the State claims, if the cocaine was illegally seized, under the inevitable discovery doctrine the cocaine would have inevitably been discovered by legal means, in a search incident to the defendant's arrest for disturbing the peace. The State contends that Sergeant Huth could have arrested the defendant for disturbing the peace. Sergeant Huth testified that he believed based on his years of experience that the defendant was under the influence of narcotics and was frightening the people he approached. The State cites State v. Sherman, 05-0779 (La. 4/4/06), 931 So.2d 286, to support its claim that Sergeant Huth had the authority to approach and search the defendant, because there was probable cause to arrest the defendant for disturbing the peace.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution article I § 5 protects individuals from unreasonable searches and seizures. State v. Massey, 03-1166, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. The purpose of the United States Constitution's Fourth Amendment is not to eliminate all contact between the police and citizens. State v. Massey, 866 So.2d at 971. Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. State v. Sam, 05-88, p. 5 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 383, writ denied, 05-2100 (La. 3/10/06), 925 So.2d 510. See, Terry v. Ohio, supra. "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." LSA-C.Cr.P. art. 215.1, State v. Sims, 02-2208 (La. 6/27/03), 851 So.2d 1039, 1043. Reasonable suspicion is something less than probable cause to arrest, and requires that police officers have sufficient *758 knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Massey, 866 So.2d at 968. A police officer must be able to articulate specific facts upon which his suspicion is based. State v. Burciaga, 05-357 (La.App. 5 Cir. 2/27/06), 924 So.2d 1125, 1129, citing State v. Kang, 01-1262, p. 4 (La.App. 5 Cir. 2/23/04), 866 So.2d 408, 412, writ denied, 04-944 (La. 11/24/04), 888 So.2d 226. A detaining officer "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . .'" State v. Burciaga, 924 So.2d at 1129, citing State v. Collins, 04-751, p. 3 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, 618, quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). An unparticularized hunch is insufficient to establish reasonable grounds to stop an individual. State v. Barney, 97-777, p. 3 (La. App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207. "In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883.
An area with the reputation of having "high crime" is an articulable fact upon which the police may rely and is relevant in the determination of whether there is reasonable cause to conduct an investigatory stop. State v. Barney, 708 So.2d at 1207. Flight, nervousness, or a startled look at the sight of a police officer is insufficient to justify an investigatory stop by itself. State v. Massey, 866 So.2d at 968. However, these types of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion. Id. In addition, a police officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support a finding of reasonable suspicion for an investigatory stop. State v. Martin, 99-123, p. 4 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102. Whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference is determined under the facts and circumstances of each case. State v. Sam, 905 So.2d at 383-384. "The credibility of witnesses at the suppression hearing is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and such credibility determinations will not be reweighed on appeal." State v. Enclade, 03-353, p. 5 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13.
The State has the burden of establishing the admissibility of evidence seized without a warrant, in a hearing on a defense motion to suppress the evidence. LSA-C.Cr.P. art. 703(D), State v. Manson, 01-159, p. 4 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Wong Sun v. U.S., 371 U.S. 471, 485, 83 S.Ct. 407, 415-416, 9 L.Ed.2d 441 (1963). Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution. State v. Harris, 00-1930, pp. 3-4 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 801-802. A trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Gagnon, 01-1302, p. 5 (La.App. 5 Cir. 4/10/02), 817 So.2d 167, 171. See also, State v. Payne, 04-1084, p. 3 (La.App. 5 Cir. 1/25/05), 894 *759 So.2d 528, 530. The appellate court must consider the totality of the circumstances, while giving deference to the inferences and deductions of trained police officers that might elude an untrained person. State v. Gagnon, 817 So.2d at 170.
In this case, the initial question is whether Sergeant Huth had reasonable suspicion to justify the investigatory stop. Sergeant Huth claims that he decided to investigate the defendant, because his actions were extremely suspicious, and his "loud behavior" alarmed the people he approached. He was also informed by at least two employees of the businesses that the defendant's actions were causing alarm to them, as well as the businesses' patrons. Sergeant Huth described the defendant as exhibiting loud behavior and racing around the second floor of the parking area of the complex as handed out cards. He testified that he could have arrested the defendant for disturbing the peace. Sergeant Huth's experience as a police officer, the complex's "extremely bad problem" with individuals picking up pills and then selling the pills in the parking lot, the employees' complaints, and the defendant's behavior provided justification for the investigatory stop.
Since, the investigatory stop was justified, in light of the recent Louisiana Supreme Court case of State v. Sherman, supra, there must next be a determination of whether there was probable cause to arrest the defendant for disturbing the peace. Probable cause is required for the warrantless search to fall within the exception of a search incident to arrest, even though the defendant was not arrested for the offense. See also, State v. Roche, 05-237, p. 7 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767. Therefore, if there was probable cause to arrest the defendant, the warrantless search of defendant would not violate the Fourth Amendment or La. Const. art. I, § 5.
In State v. Sherman, supra, the defendant was convicted of possession of cocaine with intent to distribute. The case on appeal concerned the reasonableness of a warrantless search where there was probable cause to arrest the defendant for a misdemeanor traffic offense, but the police had no intention to arrest the defendant for the offense for which probable cause existed. The Louisiana Supreme Court found,
Given the fact the lawful custodial arrest alone is sufficient to find a warrantless search of the person reasonable, and that the search may precede the actual arrest, we find where probable cause to arrest exists, a search of the person does not violate the Fourth Amendment or La. Const. art. I, § 5, where the suspect is subject to the greater intrusion of arrest and search.
(Citations omitted)
Nor should the subjective intentions of the officers play any role in our analysis. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). In a unanimous decision, the United States Supreme Court held that when a purportedly pretextual traffic stop has been made where there was probable cause to believe the motorist violated the traffic laws, no Fourth Amendment challenge may be undertaken on the basis the subjective intent of the officers was to use the traffic stop as a means of investigating other law violations. Id., 517 U.S. at 810-813, 116 S.Ct. at 1773-1774. The Court noted it had never held, outside the context of an inventory search or administrative inspection, that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; the Court had repeatedly held and asserted the *760 contrary. Id., 517 U.S. at 812, 116 S.Ct. at 1774. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973) established "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id., 517 U.S. at 813, 116 S.Ct. at 1774 (quoting Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The constitutional reasonableness of a traffic stop does not depend on the actual motivation of the officer. Whren, 517 U.S. at 813, 116 S.Ct. at 1774. Given that the subjective intentions of the officers are not relevant in determining the constitutional reasonableness of traffic stops, we find the subjective intent of the officers does not determine the reasonableness of a warrantless search incidental to arrest, where the officer did not have an intent to arrest for the offense for which probable cause objectively existed.

State v. Sherman, 931 So.2d at 295-296.
Probable cause exists when the arresting officer has knowledge of facts and circumstances based upon reasonable and trustworthy information that are sufficient to justify a man of average caution in the belief that the person he is going to arrest has committed or is committing an offense. State v. Flagg, 99-1004, p. 6 (La. App. 5 Cir. 4/25/00), 760 So.2d 522, 528, writ denied, 00-1510 (La. 3/9/01), 786 So.2d 117. A determination of probable cause does not require the resolution of conflicting evidence as required at trial. Gibson v. State, 99-1730 (La. 4/11/00), 758 So.2d 782, 788-789. Credibility determinations as well are seldom crucial in deciding whether there is available evidence supporting a reasonable belief that the person going to be arrested has committed a crime. Id. Probable cause deals with probabilities. Id. Since the probable cause standard recognizes that a degree of uncertainty may exist, an officer need not have sufficient proof to convict but he must have more than a mere suspicion. Id. "The facts need not eliminate all possible innocent explanations in order to support a finding of probable cause." Id. The determination of reasonable grounds for probable cause for an arrest does not rest on the officer's subjective beliefs or attitudes, but rather turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Hill, 01-1372, p. 4 (La. App. 5 Cir. 5/15/02), 821 So.2d 79, 83. However, while considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Id.
In this case, we find Sergeant Huth did not have probable cause to arrest the defendant for disturbing the peace. LSA-R.S. 14:103 defines disturbing the peace as:
A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or
(3) Appearing in an intoxicated condition[.]
LSA-R.S. 14:103.
*761 LSA-R.S. 14:103 requires the specific intent to deride, offend or annoy another person. McDaniel v. Green, 99-1087 (La. App. 3 Cir. 12/22/99), 755 So.2d 942, 948, review denied, 00-0200 (La.3/24/00), 758 So.2d 151. The words "foreseeably disturb or alarm the public" have previously been interpreted by the Louisiana Supreme Court to "encompass only conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance." State v. Champagne, 520 So.2d 447, 451 (La. App. 5 Cir. 2/8/88), writ denied, 530 So.2d 563 (1988), quoting Garner v. State of La., 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961).
"[T]he First and Fourteenth Amendments to the U.S. Constitution require great care in the regulation of speech." State v. Woolverton, 474 So.2d 1003, 1005 (La.App. 5 Cir. 7/29/85). Only fighting words, which by their very utterance inflict injury, that tend to incite an immediate breach of the peace are punishable. State v. Woolverton, 474 So.2d at 1005. Words that are not considered fighting words are constitutionally protected expressions. Id.
Sergeant Huth testified that the defendant talked to the people he approached in a loud, excited and boisterous manner. However, Sergeant Huth did not testify that during the time he observed the defendant that he addressed any offensive, derisive, or annoying words to anyone while on the second floor of the parking lot. In addition, Sergeant Huth did not testify that the defendant called anyone by any offensive or derisive name, made any noise or exclamation in anyone's presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty. In fact, Sergeant Huth's testimony was totally lacking in regards to the words used by defendant. There was no evidence presented showing the defendant's words or the manner in which he spoke would induce a foreseeable physical disturbance. A witness may testify to the behavioral observations of intoxication. State v. Champagne, 520 So.2d at 450. However, a violation of LSA-R.S. 14:103(A)(3) requires that the person "is present in public while intoxicated, and not when he merely looks like he is intoxicated," and that he "disturb[ ] the peace . . . in such a manner as would foreseeably disturb or alarm the public." State v. Champagne, 520 So.2d at 451.
Sergeant Huth did not testify what specific behaviors led him to believe that the defendant was under the influence of drugs. Sergeant Huth only gave a vague description of the actions of the defendant. He described the defendant as having "loud behavior" and being "extremely excitable or jumping [sic] moving back and forth. . . ." only after he stopped him. Nothing in Sergeant Huth's testimony showed that the defendant's actions had the intent to deride, offend or annoy the people he approached or that they were violent or boisterous in a manner that would induce a foreseeable physical disturbance. In fact, according to the defendant, he had left the parking lot and was attempting to get into a car to leave the area when Sergeant Huth stopped him. Therefore, we do not find there was sufficient cause to arrest the defendant for disturbing the peace under LSA-R.S. 14:103(A)(3).
Since we find no probable cause to arrest the defendant for disturbing the peace, we must next decide whether Sergeant Huth exceeded the scope of the Terry pat down, because the defendant only consented to a search for weapons. While Sergeant Huth may have had justification for the investigatory stop, the scope of the *762 search appears to be outside the level of intrusion authorized in Terry.
The Terry court found that "it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. at 24, 88 S.Ct. at 1881. However, the search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry v. Ohio, 392 U.S. at 26, 88 S.Ct. at 1882.
In this case, Sergeant Huth did not know what type of weapon the defendant might have in his possession. He testified that people in the area had been found in possession of needles and other objects that could harm him or others. Therefore, Sergeant Huth seems reasonably justified in patting down the defendant.
The crucial question, in this case, is whether the object felt by Sergeant Huth in the pat down was simultaneously and immediately identifiable with the search for weapons pursuant to the "plain feel" doctrine. In this case, we find the object was not simultaneously and immediately identifiable.
The "plain feel" doctrine applies to situations where an officer discovers contraband through the sense of touch during an otherwise lawful Terry search. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), State v. Sam, 905 So.2d at 385. The United States Supreme Court explained the "plain view" doctrine in Dickerson.
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
Dickerson, 113 S.Ct. at 2137.
Therefore, the "plain feel" exception allows an officer conducting a pat down search to seize contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband. State v. Haywood, 00-1584, p. 7 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 577.
The defendant only consented to a search for weapons. Sergeant Huth testified that during the pat down, he immediately felt an object that he thought was a marijuana joint. He admitted that when he removed the dollar bill he knew it was not a marijuana joint. When he took the dollar bill out of the defendant's pocket all he could see was the way it was folded, however he knew the folded dollar bill was not a needle, knife, gun, or other weapon. He did not know what was inside of the dollar bill, because he could not see anything. He was unable to tell that the folded dollar bill contained a piece of cellophane with cocaine inside until he unfolded it. As in Dickerson, supra, Sergeant Huth's search of the defendant exceeded the scope of a Terry search when the officer continued to examine the dollar bill after he concluded it was not a weapon and was unable to ascertain that it contained drugs without unfolding it. Therefore, the seizure of the evidence exceeded the scope of a valid Terry pat-down search and was unlawful.
Finally, the State argues that the cocaine would have been inevitably discovered in a search incident to the defendant's *763 lawful arrest for disturbing the peace under LSA-R.S. 14:103(A)(2) and (3).
"The inevitable discovery doctrine `is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if, in fact, it was discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533, 539, quoting Murray v. U.S., 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988) (emphasis omitted). The inevitable discovery doctrine, as well as the independent source doctrine, seeks to avoid excluding evidence the police would have obtained if no misconduct had taken place. State v. Vigne, 820 So.2d at 539, citing Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State has the burden of proving by a preponderance of the evidence that information inevitably would have been discovered by lawful means. State v. Vigne, 820 So.2d at 539. The application of the inevitable discovery doctrine focuses on demonstrated historical facts capable of ready verification or impeachment, not speculative elements, Id.
In the present case, we find there was no probable cause to arrest the defendant for disturbing the peace. In the absence of a showing of probable cause to arrest, the search exceeded the scope of a valid pat down search and was unlawful. Therefore, the evidence was unlawfully seized.
Consequently, we reverse the district court's denial of defendant's motion to suppress and grant the motion. In addition, the defendant's conditional guilty plea under State v. Crosby and his sentence are vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

ERROR PATENT REVIEW
The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. The review reveals one error patent in this case.
The commitment and the transcript are inconsistent. The commitment states that the defendant had three months from the date of his sentencing, January 13, 2005, to complete 100 hours of community service. However, the transcript of the sentencing hearing states that the defendant has 90 days to complete the 100 hours of community service indicated on the probation form. In addition, the "Acknowledgment and Waiver of Constitutional Rights Guilty Plea" form signed by the defendant does not give any date or time period for the completion of the 100 community service hours. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand the matter and order the trial court to correct the commitment to reflect that the defendant's community service hours must be completed within ninety days.
Accordingly, the trial court's denial of defendant's motion to suppress is reversed and defendant's guilty plea and sentence are vacated. This matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
GUIDRY, J., dissents with reasons.
GUIDRY, J., dissents with reasons.
Based on my review of the matter, I conclude that the constitutional requirements *764 for the stop, search, and seizure have been met, and that the Motion to Suppress the Evidence was properly denied.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).