981 So.2d 784 (2008)
Russell GAINEY and Rusty H. Gainey
v.
LOUISIANA WILDLIFE AND FISHERIES COMMISSION, Irvin H. "Sandy" Dares, Jr. and Philip Siragusa.
No. 2007-CA-0783.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 2008.
Rehearing Denied May 15, 2008.
J. Thomas Beasley, Patrick H. Hufft, New Orleans, LA, for Plaintiffs/Appellants.
Raul R. Bencomo, Special Assistant Attorney General, Bencomo & Associates, New Orleans, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge LEON A. CANNIZZARO, JR.).
CHARLES R. JONES, Judge.
The Appellants, Russell Gainey, Sr. and Russell "Rusty" Gainey, Jr., appeal a district court judgment dismissing their claims against the Appellees, the Louisiana Department of Wildlife and Fisheries ("the *785 LDWF"), Irvin H. Dares, Jr., and Philip Siragusa. We affirm.
In June of 1982, the Gaineys were shrimping in Plaquemines Parish on an anchored boat owned by Russell Gainey, Sr. (hereinafter referred to as "Mr. Gainey"), when they were approached by Agents Irvin "Sandy" Dares and Philip Siragusa. Agents Dares and Siragusa decided to conduct an investigative stop on Mr. Gainey's boat as it was the type of vessel, a "Mamou rig," that the Agents customarily encountered as having oversized nets.
The facts involving the investigative stop are in dispute. Nevertheless, it is undisputed that the Agents boarded Mr. Gainey's boat, andupon inspecting his netscited him for using oversized nets. Agents Dares and Siragusa decided to confiscate the nets pursuant to La. R.S. 56:56(5).[1]
Russell "Rusty" Gainey, Jr. (hereinafter referred to as "Rusty"), who was seventeen (17) years of age at the time, was cutting down the nets when he fell from the boat into the bayou and allegedly sustained bodily injuries. How Rusty came to cut-down the oversized nets is also disputed. The Gaineys assert that the crew was ordered to cut the nets down by Agents Dares and Siragusa; however, the Agents aver that Mr. Gainey ordered Rusty and two (2) other deckhands to remove the nets.
At trial, the district court found that the critical issue was whether the LDWF agents had a duty to retrieve the nets themselves. The district court rendered judgment in favor of the LDWF and dismissed the Gaineys' lawsuit. It is from that judgment that the Gaineys have taken the instant appeal.
The Gaineys raise two (2) issues on appeal. First, they assert that the district court erred when it found that no duty exists on the part of Agents Dares and Siragusa under the facts herein. Their second assignment of error is that the district court's findings of fact regarding the Agents' actions are clearly erroneous and not supported by the record.
"The proper standard of review is whether the trial court committed an error of law or made a factual finding which is manifestly erroneous or clearly wrong." Gibson v. State, 99-1730, p. 6 (La.4/11/00), 758 So.2d 782, 788 (citing Rosell v. ESCO, 549 So.2d 840 (La.1989)). "If the trial court's decision is reasonable in light of the record reviewed in its entirety, this court may not reverse even if we would have weighed the evidence differently." Id.
The Gaineys' first assignment of error is that the district court erred when it found that no duty exists on the part of the Agents under the facts herein. The Gaineys specifically allege that there was a duty owed by the Agents to seize and/or confiscate the oversized nets themselves.
The district court held that the Agents owed the Gaineys a general duty imposed upon police officers, pursuant to La. R.S. 56:55.2(A). La. R.S. 56:55.2(A), entitled Additional Authority of Commissioned Wildlife Enforcement Agent, provides:
A. To facilitate the effective protection of private and public rights and property and life throughout the state's waterways, sea, and land, duly commissioned *786 wildlife enforcement agents of the enforcement division of the Department of Wildlife and Fisheries who have graduated from the Department of Wildlife and Fisheries enforcement training academy, the Louisiana State University law enforcement training program, the Louisiana State Police Training Academy, or the University of Louisiana at Monroe law enforcement training program shall, in addition to the authority otherwise conferred by law upon such officers, be vested with the same authority and powers conferred by law upon other law enforcement officers of this state, provided that a qualification and requalification for firearms used be established within the department on at least an annual basis to insure the proficiency for firearms use by all officers vested with the authority and powers conferred herein. [Emphasis added.]
In essence, this duty is a general one imposed upon police officers. The district court found that this general duty combined with the exclusive authority that the LDWF agents have over wildlife and fisheries matters did not extend to protect Rusty from the risk that he might get injured while cutting down a net from a vessel. We agree.
In Wellman v. Evans, XXXX-XXXX, (La. App. 3 Cir. 6/16/04), 876 So.2d 954, the Third Circuit explained that:
A police officer, in carrying out his authority to enforce laws, has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606. An officer must act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for the well being of those he is employed to protect. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. In considering whether an officer breached his duty, the court's task is not to determine whether the officer should have acted differently or if there were better options available, but only to determine whether his actions were reasonable under the totality of the circumstances. [Emphasis added.]
Id., XXXX-XXXX, p. 6-7, 876 So.2d at 959.
The Third Circuit further stated:
[t]he liability of a police officer is determined using the duty/risk analysis. Mathieu v. Imperial Toy Corp., 94-952 (La.11/30/94), 646 So.2d 318. For a plaintiff to recover, he must prove the defendant had a duty to conform his conduct to a specific standard of care; he failed to conform his conduct to that standard; that substandard conduct was a cause-in-fact of the injury, the substandard conduct was a legal cause of the injury; and damages. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Id. at 322.
Id., XXXX-XXXX, p. 5, 876 So.2d at 958.
Additionally, the Supreme Court has held that courts must make a policy decision in light of the unique facts and circumstances presented, when deciding whether to impose a duty in a particular case. Lemann v. Essen Lane Daiquiris, Inc., XXXX-XXXX, p. 8 (La.3/10/06), 923 So.2d 627, 633. The Supreme Court rationalized that "[t]he inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." Id.
The Gaineys contend that because the agents were seizing the nets, they had a duty to cut the nets down; therefore, they are liable for the injuries that Rusty, who was a minor at the time, sustained. Agents Dares and Siragusa assert that in *787 consideration of the LDWF's policy on net seizures and as a matter of courtesy they asked Mr. Gainey to cut-down the nets. Both Agents testified they regularly asked boat captains, who were caught with oversized nets, if they would remove the nets themselves. If the captains opted not to remove the nets themselves, the Agents testified that they would remove the nets.
Agent Dares testified that he was trained to ask boat captains to cut down Mamou nets because the captains and their crews are familiar with the winches, cables, ropes and chains that are used to fasten such nets. He testified that when seizing nets it was the customary practice of the LDWF to first ask captains to assist with net removal. If the captains decline, agents would proceed to remove the nets themselves. Agent Dares further testified that the reason for asking the boat captains to remove the nets is because the captains have "expertise and experience" with these nets.
Agent Siragusa testified that captains would often volunteer to remove nets themselves. He further testified that they would express their appreciation at being allowed to remove their own nets, clean them and wrap them up, because by doing so they knew the condition in which the LDWF received the nets. Lastly, he testified that he never ordered anyone to take down nets because that is not how the LDWF operates.
The Gaineys bore the burden of demonstrating that there is a statutory basis, jurisprudential basis or a basis in general law that the LDWF agents had a duty to physically remove the nets in question. In support of their claim, they assert that the Agents had a statutory duty to remove the nets in question pursuant to La. R.S. 56:57. La. R.S. 56:57 states that "any enforcing officer shall seize ... the equipment used or employed in the commission of offenses prohibited by this Chapter and taken into or possession by the department."
"Seize" is not defined under Title 56. According to Black's Law Dictionary, "seize" has three (3) definitions that are relevant to the instant case: 1) to forcibly take possession; 2) to place in possession; and 3) to be in possession. We find that Agents Dares and Siragusa seized the nets by obtaining possession of them and placing them in the custody of the LDWF. There does not have to be a forceful removal or taking of the nets by the agents for there to be seizure. The LDWF's goal of stopping fishermen from utilizing oversized nets is no less served when fishermen remove their own nets and surrender possession of them to LDWF agents.
The Gaineys' interpretation of La. R.S. 56:57 as creating an obligation upon the LDWF agents to forcibly remove nets, however, has not been set forth statutorily, jurisprudentially or by general principles of law. Moreover, Agents Dares and Siragusa both testified that there is nothing in the LDWF policy and procedure manual that details how the agents are supposed to confiscate nets. Furthermore, Agent Dares testified that the responsibility of the LDWF agents to seize nets "[m]eans that you cause the seizure to take place. It doesn't necessarily mean that you [are] the one who picks something up...."
In finding that the Gaineys did not establish that the agents owed them a special duty, the district court rationalized:
In order for the Plaintiff to recover in this matter, the Court must discern that the wildlife agents had a duty to retrieve the nets themselves and to actually prohibit the crew from doing so. This the Court cannot do. In view of the fact that the vessel's crew installed the nets in the first place; operate the nets and the rigging in the course of their fishing *788 operations, which operation includes the climbing onto the rigging by the crew; and considering the professed reasons that the agents allow the captain of the vessel the option of cutting down his own nets (which has relevance as moral, social, and economic factors), the Court cannot find a duty on the part of the wildlife agents to prohibit the crew the option of retrieving their own nets. Thus, no duty was breached and there can be no liability on the part of the State in this situation.
We support the district court's reasoning in not finding a duty to impose under the unique facts and circumstances of this case. The LDWF's custom of allowing fishermen to remove their own nets benefits both parties. The fishermen ensure that their nets are not damaged and are cleaned in the removal process while LDWF agents obtain custody of the nets without having to familiarize themselves with the unique manner in which every boat captain or crew has fastened their nets. Therefore, we find that the agents did not have a duty to cut-down the nets themselves.
The Gaineys' second assignment of error is that the district court's findings of fact regarding the Agents' actions are clearly erroneous and not supported by the record. Although the district court did accept the testimony of Agents Dares and Siragusa as fact, it explained in its reasons for judgment that the resolution of the "factual dispute" was not "the critical inquiry to the Court's determination of liability in this litigation." Considering that the district court's judgment was predicated on its analysis of whether LDWF agents have a duty to physically seize nets and preclude others from doing so, we do not find that the district court's factual findings impacted its ultimate decision. Moreover, we do not find that the district court's factual findings were manifestly erroneous where the court was faced with conflicting testimony. Therefore, we find that this assignment of error lacks merit.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 56:56(5) provides that any enforcing officer may seize:

(5) Tackle, seines and other nets, trawls, tongs, dredges, and other equipment and devices used in taking of fish, shrimp, oysters, or other aquatic life contrary to the provisions of this Chapter.